## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PHYSIOTHERAPY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 13-12965 (KG) |
| | ) | |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

### JOINT PREPACKAGED PLAN OF REORGANIZATION OF PHYSIOTHERAPY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:     (302) 426-1189
Facsimile:      (302) 426-9193

- and -

Morton Branzburg (*pro hac vice* admission pending)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:     (215) 569-2700
Facsimile:      (215) 568-6603

Jonathan S. Henes, P.C. (*pro hac vice* admission pending)
Nicole L. Greenblatt (*pro hac vice* admission pending)
David S. Meyer (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

Dated: October 10, 2013

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Physiotherapy Holdings; Inc. (5193); Actra Rehabilitation Associates, Inc. (7806); Alexandria Sports; Inc. (7654); Benchmark Acquisition Corp. (3850); Benchmark Medical Management Company (0335); Benchmark O & P Holdings, Inc. (6848); Benchmark Orthotics & Prosthetics, Inc. (7000); Blue Hen Physical Therapy, Inc. (7267); Cape Prosthetics-Orthotics, Inc.(7914); Carrollton Physical Therapy Clinic, Inc. (2832); Integrity Physical Therapy, Inc. (1075); Keystone Rehabilitation Associates of Warren (8341); Keystone Rehabilitation Systems, Inc. (8380); Keystone Rehabilitation Systems of McMurray (6304); Leesburg Sports, Inc. (4190); MATRIX Healthcare Services, LLC (7344); MATRIX Rehabilitation, Inc. (3147); MATRIX Rehabilitation-Delaware, Inc. (2504); MATRIX Rehabilitation-Georgia, Inc. (4073); MATRIX Rehabilitation-Ohio, Inc. (2505); MATRIX Rehabilitation-South Carolina, Inc.(5603); MATRIX Rehabilitation-Texas, Inc. (9542); Morris Area Rehabilitation Association, Inc. (2043); North Dallas Physical Therapy Associates, Inc. (5331); Northstar Health Services, Inc. (7152); NSHS Services, Inc. (6789); Orthopaedic Services of Paducah, Inc. (3143); PhysioLink Corporation (3705); Physiotherapy Associates Holdings, Inc. (3367); Physiotherapy Associates-Union Rehab, LLC (0041); Physiotherapy Associates, Inc. (7193); Physiotherapy Corporation (3816); Physiotherapy-BMHI Holdings, Inc. (3361); Physiotherapy-BMI, Inc. (4107); Potomac Rehabilitation Services, Inc. (2725); Professional Rehab Associates, Inc. (2393); Progressive Therapy Services, Inc. (8449); R.S. Network, Inc. (9104); Rehab Associates, LLC (9381); Rehab Colorado, LLC (5804); Rehab Missouri, LLC (0587); Rehab Xcel, LLC (0586); Rehabilitation Consultants, Inc. (1166); SMR Banyan Tree, Inc. (6933); Swanson Orthotic & Prosthetic Center, Inc. (2308); The Parks Physical Therapy and Work Hardening Center, Inc. (2926); Theraphysics Partners of Colorado, Inc. (2115); Theraphysics Partners of Texas, Inc. (9976); Therapy Associates of Martinsville, Inc. (1394); Trumbull P.T. Corp. (3855); and Wisconsin Prosthetics and Orthotics, Inc. (7815). The Debtors' main corporate address is 855 Springdale Drive, Suite 200, Exton, PA 19341.

**TABLE OF CONTENTS**

**Page**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ...................................................................................................... 1

    A.       Defined Terms. ......................................................................................... 1
    B.       Rules of Interpretation. .......................................................................... 12
    C.       Computation of Time. ............................................................................ 13
    D.       Governing Law. ..................................................................................... 13
    E.       Reference to Monetary Figures. ............................................................ 13
    F.       Reference to the Debtors or the Reorganized Debtors............................ 13

ARTICLE II. ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS ...................................... 13

    A.       Administrative Claims............................................................................ 13
    B.       Priority Tax Claims. .............................................................................. 15
    C.       Statutory Fees. ....................................................................................... 15

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.................................... 15

    A.       Classification of Claims and Interests. .................................................. 15
    B.       Summary of Classification. .................................................................... 15
    C.       Treatment of Claims and Interests. ........................................................ 16
    D.       Special Provision Governing Claims...................................................... 20
    E.       Elimination of Vacant Classes. .............................................................. 20
    F.       Acceptance or Rejection of the Plan....................................................... 20
    G.       Confirmation Pursuant to Sections 1129(a) (10) and 1129(b) of the Bankruptcy Code. .............................................................................. 21
    H.       Controversy Concerning Impairment. .................................................... 21
    I.       Subordinated Claims. ............................................................................ 21

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN........................................................ 21

    A.       Sources of Cash for Plan Distributions................................................... 21
    B.       Exit Facility. ......................................................................................... 21
    C.       Settlement of Certain Claims and Interests. ........................................... 22
    D.       Issuance and Distribution of New Common Stock................................... 22
    E.       New Stockholders Agreement. ............................................................... 22
    F.       Restructuring Transactions. .................................................................... 23
    G.       Corporate Existence................................................................................ 23
    H.       Vesting of Assets in the Reorganized Debtors. ...................................... 23
    I.       Cancellation of Existing Indebtedness and Securities. ........................... 23
    J.       Corporate Action. .................................................................................. 24
    K.       New Certificates of Incorporation and New By-Laws. .......................... 24
    L.       Directors and Officers of the Reorganized Debtors................................ 24
    M.       Effectuating Documents; Further Transactions. ..................................... 25
    N.       Management Incentive Plan. .................................................................. 25
    O.       Senior Management and Management Employment Agreements............ 25
    P.       Exemption from Certain Taxes and Fees................................................. 25
    Q.       Legacy D&O Liability Insurance Policies............................................... 25
    R.       Indemnification Provisions..................................................................... 26
    S.       Indemnification of Consenting Noteholders and Consenting Shareholders. .......... 26
    T.       Assumption of Independent Director Indemnification Obligations........ 26

U.      Preservation of Causes of Action. ................................................................. 26
V.      Litigation Trust ................................................................................................ 27
W.      Dissolution of Holdings ................................................................................... 29

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................ 29

A.      Assumption and Rejection of Executory Contracts and Unexpired Leases. ............ 29
B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases. ............. 30
C.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed. .......... 30
D.      Insurance Policies. ........................................................................................... 30
E.      Modifications, Amendments, Supplements, Restatements, or Other
        Agreements. ..................................................................................................... 31
F.      Reservation of Rights. ...................................................................................... 31
G.      Nonoccurrence of Effective Date. ................................................................... 31
H.      Contracts and Leases Entered Into After the Petition Date. ................................ 31

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...................................................... 31

A.      Timing and Calculation of Amounts to Be Distributed. .................................... 31
B.      Disbursing Agent. ............................................................................................ 32
C.      Rights and Powers of Disbursing Agent. ......................................................... 32
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. ............ 32
E.      Manner of Payment. ......................................................................................... 33
F.      Section 1145 Exemption. ................................................................................. 34
G.      Section 3(a)(9) Exemption. ............................................................................... 34
H.      Compliance with Tax Requirements. ............................................................... 34
I.      Allocations. ...................................................................................................... 34
J.      Setoffs and Recoupment. ................................................................................. 34
K.      Claims Paid or Payable by Third Parties. ......................................................... 35

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
        DISPUTED CLAIMS ......................................................................................... 35

A.      Prosecution of Objections to Claims. ............................................................... 35
B.      Claims Administration Responsibilities. ........................................................... 36
C.      Estimation of Claims. ....................................................................................... 36
D.      Adjustment to Claims Without Objection. ....................................................... 36
E.      Disallowance of Claims. ................................................................................... 36
F.      No Distributions Pending Allowance. .............................................................. 36
G.      Distributions After Allowance ......................................................................... 37

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ........................ 37

A.      Compromise and Settlement of Claims, Interests, and Controversies. ................. 37
B.      Discharge of Claims and Termination of Interests. ........................................... 37
C.      Release of Liens. .............................................................................................. 37
D.      Releases by the Debtors. ................................................................................... 38
E.      Releases by the Releasing Parties. .................................................................... 38
F.      Liabilities to, and Rights of, Governmental Units. ........................................... 39
G.      Exculpation. ..................................................................................................... 39
H.      Injunction. ........................................................................................................ 39
I.      Term of Injunctions or Stays. ........................................................................... 41

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ..........................................41

      A.      Conditions Precedent to the Effective Date. ..............................................................41
      B.      Waiver of Conditions. ..............................................................................................41
      C.      Effect of Failure of Conditions. ...............................................................................41

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .....................................42

      A.      Modification and Amendments. ................................................................................42
      B.      Effect of Confirmation on Modifications. .................................................................42
      C.      Revocation or Withdrawal of Plan. ...........................................................................42

ARTICLE XI. RETENTION OF JURISDICTION.................................................................................................42

ARTICLE XII. MISCELLANEOUS PROVISIONS ...............................................................................................44

      A.      Immediate Binding Effect. .......................................................................................44
      B.      Additional Documents...............................................................................................45
      C.      Payment of Certain Professional Fees. .....................................................................45
      D.      Statutory Committee and Cessation of Fee and Expense Payment...........................45
      E.      Payment of Fees and Expenses for Counsel to the Consenting
              Shareholders. ............................................................................................................45
      F.      Reservation of Rights. ..............................................................................................45
      G.      Successors and Assigns. ...........................................................................................45
      H.      Notices.......................................................................................................................45
      I.      Entire Agreement.......................................................................................................47
      J.      Exhibits. ....................................................................................................................47
      K.      Severability of Plan Provisions.................................................................................48
      L.      Votes Solicited in Good Faith. ..................................................................................48
      M.      Closing of Chapter 11 Cases. ...................................................................................48
      N.      Conflicts. ...................................................................................................................48

**INTRODUCTION**

Physiotherapy Holdings, Inc. ("Holdings") and its debtor affiliates, as debtors and debtors in possession propose this joint prepackaged plan of reorganization (the "Plan") for the resolution of the Claims against and Interests in each of the Debtors pursuant to chapter 11 of the Bankruptcy Code (as such terms are defined below). Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A.

Holders of Claims and Interests should refer to the Disclosure Statement (as such terms are defined below) for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information and projections of future operations, as well as a summary and description of this Plan.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.    "*2012 Transaction*" means all transactions whenever occurring, including, without limitation, borrowings, dividends, sales, and purchases of securities (whether debt or equity) or bonuses that in any way relate to the acquisition, satisfaction or issuance of debt or equity of the Debtors or any Affiliate on or about April 30, 2012.

2.    "*Accrued Professional Compensation*" means, at any given moment, all accrued, contingent, and/or unpaid fees and expenses for services rendered through and including the Effective Date by any retained Professional in the Chapter 11 Cases that the Bankruptcy Court has not denied by Final Order; provided, however, that any such fees and expenses (a) have not been previously paid (regardless of whether a fee application has been Filed for any such amount) and (b) have been applied against any retainer that has been provided to such Professional.  To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

3.    "*Ad Hoc Committee of Senior Noteholders*" means that certain committee of Holders of Senior Notes Claims.

4.    "*Administrative Claim*" means any Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (b) Accrued Professional Compensation Claims; (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code; and (d) all Allowed requests for compensation or expense reimbursement for making a substantial contribution to the Chapter 11 cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

5.    "*Administrative Claims Bar Date*" means the date that is 30 days after the Effective Date.

6.    "*Administrative Claims Objection Deadline*" means the date that is 60 days after the Effective Date.

7.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

8.    "*Allowed* m*eans as to a Claim or an Interest, a Claim or an Interest allowed under the Plan, under the Bankruptcy Code, as applicable, or by a Final Order.

9.      *"Assumed Executory Contract and Unexpired Lease List"* means the list (as may be amended), as determined by the Debtors or the Reorganized Debtors and in form and substance reasonably acceptable to the Ad Hoc Committee of Senior Noteholders, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Reorganized Debtors pursuant to the provisions of Article V.A and which shall be included in the Plan Supplement.

10.      *"Ballot"* means the form or forms distributed to certain Holders of Claims entitled to vote on the Plan by which such parties may indicate acceptance or rejection of the Plan.

11.      *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§101-1532, as may be amended from time to time.

12.      *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

13.      *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

14.      *"Bridge Loan Agent"* means U.S. Bank, National Association, in its capacities as administrative agent and collateral agent under the Bridge Loan Credit Agreement and any other capacities thereunder or related thereto, including any capacity held by any of its Affiliates.

15.      *"Bridge Loan Credit Agreement"* means that certain credit agreement, dated as of July 31, 2013 (as amended, supplemented, or modified from time to time), by and among Physiotherapy Associates Holdings, Inc., as borrower, Holdings and the Bridge Loan Credit Agreement Guarantors, as guarantors, the Bridge Loan Lenders, and U.S. Bank, National Association, in its capacities as administrative agent and collateral agent.

16.      *"Bridge Loan Credit Agreement Claims"* means any Claim derived from, based upon, relating to, or arising from the Bridge Loan Credit Agreement.

17.      *"Bridge Loan Credit Agreement Guarantors"* means Holdings, Keystone Rehabilitation Systems of McMurray, and the Senior Notes Guarantors.

18.      *"Bridge Loan Facility"* means the $140 million term loan provided under the Bridge Loan Credit Agreement.

19.      *"Bridge Loan Lenders"* means the lenders party to the Bridge Loan Credit Agreement.

20.      *"Business Day"* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

21.      *"Cash"* means the legal tender of the United States of America.

22.      *"Causes of Action"* means any action, claim, cause of action, controversy, demand, right, right of setoff, cross claim, counterclaim, recoupment, claim for breach of duty imposed by law or in equity, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured, or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

23.     *"Chapter 11 Cases"* means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

24.     *"Claim"* means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

25.     *"Claims Register"* means the official register of Claims maintained by Kurtzman Carson Consultants LLC, retained as the Debtors' notice, claims, and solicitation agent.

26.     *"Class"* means a class of Claims or Interests as set forth in Article III pursuant to section 1122(a) of the Bankruptcy Code.

27.     *"Committee"* means any official committee (and all subcommittees thereof) appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

28.     *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

29.     *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

30.     *"Confirmation Hearing"* means the confirmation hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

31.     *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code in form and substance reasonably acceptable to the Ad Hoc Committee of Senior Noteholders.

32.     *"Consenting Bridge Loan Lenders"* means 100% of the Bridge Loan Lenders.

33.     *"Consenting Noteholders"* means (i) those Holders of Senior Notes Claims who have executed the Plan Support Agreement and collectively hold more than $66 \frac{2}{3}$% in principal amount of Senior Notes and (ii) those Holders of Senior Notes Claims who have opted-in to the settlement described in Article III.C.4 below, in accordance with the terms of the Plan and any applicable Ballot and solicitation procedures.

34.     *"Consenting Shareholders"* means the Court Square affiliates that have executed the Plan Support Agreement and that collectively hold approximately 89.98% of the outstanding shares in Holdings.

35.     *"Consummation"* means the occurrence of the Effective Date.

36.     *"Contributed Claims"* shall have the meaning set forth in Article IV.V.

37.     *"Contributing Claimants"* means the Debtors and their Estates, the Consenting Noteholders, and the Consenting Shareholders.

38.     *"Court Square"* means (i) Court Square Capital Partners II, L.P., Court Square Capital Partners II-A, L.P., Court Square Capital Partners (Executive) II, L.P., Court Square Capital Partners (Offshore) II, L.P. (in their respective capacities as equity holders, debt holders, and advisor, only) and (ii) each of their current and former Affiliates, (iii) any investment fund managed by Court Square Capital Partners II, L.P. or its Affiliates, (iv) any current or former Affiliates of any such investment fund, (v) any successor to Court Square Capital Partners II, L.P., investment management business, and (vi) current or former directors, officers, members, shareholders, partners, employees, and agents of any of the foregoing entities.

3

39.     *"Cure Claim"* means a Claim based upon a Debtor's default under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

40.     *"Cure Notice"* means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases, (b) Cure Claims to be paid in connection therewith, and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

41.     *"Debtor"* means one of the Debtors, in its individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

42.     *"Debtors"* means, collectively: (a) Holdings; (b) Actra Rehabilitation Associates, Inc.; (c) Alexandria Sports; Inc.; (d) Benchmark Acquisition Corp.; (e) Benchmark Medical Management Company; (f) Benchmark O & P Holdings, Inc.; (g) Benchmark Orthotics & Prosthetics, Inc.; (h) Blue Hen Physical Therapy, Inc.; (i) Cape Prosthetics-Orthotics, Inc.; (j) Carrollton Physical Therapy Clinic, Inc.; (k) Integrity Physical Therapy, Inc.; (l) Keystone Rehabilitation Associates of Warren; (m) Keystone Rehabilitation Systems, Inc.; (n) Keystone Rehabilitation Systems of McMurray (o) Leesburg Sports, Inc.; (p) MATRIX Healthcare Services, LLC; (q) MATRIX Rehabilitation, Inc.; (r) MATRIX Rehabilitation-Delaware, Inc.; (s) MATRIX Rehabilitation-Georgia, Inc.; (t) MATRIX Rehabilitation-Ohio, Inc.; (u) MATRIX Rehabilitation-South Carolina, Inc.; (v) MATRIX Rehabilitation-Texas, Inc.; (w) Morris Area Rehabilitation Association, Inc.; (x) North Dallas Physical Therapy Associates, Inc.; (y) Northstar Health Services, Inc.; (z) NSHS Services, Inc.; (aa) Orthopaedic Services of Paducah, Inc.; (bb) PhysioLink Corporation; (cc) PAH; (dd) Physiotherapy Associates-Union Rehab, LLC; (ee) Physiotherapy Associates, Inc.; (ff) Physiotherapy Corporation; (gg) Physiotherapy-BMHI Holdings, Inc.; (hh) Physiotherapy-BMI, Inc.; (ii) Potomac Rehabilitation Services, Inc.; (jj) Professional Rehab Associates, Inc.; (kk) Progressive Therapy Services, Inc.; (ll) R.S. Network, Inc.; (mm) Rehab Associates, LLC; (nn) Rehab Colorado, LLC; (oo) Rehab Missouri, LLC; (pp) Rehab Xcel, LLC; (qq) Rehabilitation Consultants, Inc.; (rr) SMR Banyan Tree, Inc.; (ss) Swanson Orthotic & Prosthetic Center, Inc.; (tt) The Parks Physical Therapy and Work Hardening Center, Inc.; (uu) Theraphysics Partners of Colorado, Inc.; (vv) Theraphysics Partners of Texas, Inc.; (ww) Therapy Associates of Martinsville, Inc.; (xx) Trumbull P.T. Corp.; and (yy) Wisconsin Prosthetics and Orthotics, Inc.

43.     *"Description of Transaction Steps"* means the description of the Restructuring Transactions as set forth in the Plan Supplement.

44.     *"Disbursing Agent"* means the Reorganized Debtors or the Entity or Entities selected by the Reorganized Debtors to make or facilitate distributions contemplated under the Plan.

45.     *"Disclosure Statement"* means the Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Physiotherapy Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, dated October 10, 2013, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law, and is in form and substance reasonably acceptable in all respects to the Consenting Shareholders and the Ad Hoc Committee of Senior Noteholders.

46.     *"Disputed"* means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

47.     *"Distribution Record Date"* means the Effective Date.

48.     *"Effective Date"* means the date selected by the Debtors, the Ad Hoc Committee of Senior Noteholders, the Consenting Bridge Loan Lenders, and the Consenting Shareholders that is a Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.A and Article IX.B and (b) no stay of the Confirmation Order is in effect.

4

49.     *"Entity"* means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

50.     *"Estate"* means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

51.     *"Exculpated Claim"* means any Claim related to any act or omission derived from, based upon, related to, or arising from the Debtors' restructuring efforts, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation, solicitation or filing of the Disclosure Statement, the Plan (including any term sheets related thereto), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of Consummation, and the administration and implementation of the Plan, including (a) the New Corporate Governance Documents, (b) the Restructuring Transactions, (c) the issuance of the New Common Stock, and (d) the distribution of property under the Plan or any other agreement, provided, however, that any Contributed Claim shall not be an Exculpated Claim.

52.     *"Exculpated Party"* means each of:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Bridge Loan Agent; (d) the Bridge Loan Lenders; (e) the Ad Hoc Committee of Senior Noteholders; (f) the Holders of Senior Notes Claims who executed the Plan Support Agreement; (g) the Senior Notes Indenture Trustee; (h) the Exit Facility Agent; (i) the Exit Lenders; (j) the Consenting Shareholders; and (k) with respect to each of the foregoing Entities in clauses (a) through (j), such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and current (as of September 1, 2013) officers, directors, principals, members, partners, shareholders employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, advisory board members and other professionals, and such Persons' respective heirs, executors, estates, servants, and nominees.  Notwithstanding the foregoing, under no circumstances shall any of the Potential Defendants and Witnesses constitute an Exculpated Party.

53.     *"Executory Contract"* means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

54.     *"Exit Facility*" means (a) a term loan credit facility of $144.162 million, of which $140 million shall be used to refinance the existing Bridge Loan Facility and (b) incremental credit facilities, each to be issued and accessed in accordance with the Exit Facility Credit Agreement and each secured by a first-priority lien on and security interests in substantially all the Reorganized Debtors' assets, which facilities shall be consistent in all material respects with the Exit Facility Commitment Letter and in form and substance reasonably acceptable to the Ad Hoc Committee of Senior Noteholders, to be executed and delivered by the parties thereto on or about, and as a condition to, the Effective Date.

55.     *"Exit Facility Agent"* means U.S. Bank National Association or such other financial institution in its capacity as administrative agent, collateral agent, and issuing bank under the Exit Facility Credit Agreement.

56.     *"Exit Facility Commitment Letter"* means the commitment letter, which is attached as Exhibit B to the Disclosure Statement, setting forth the material terms of the Exit Facility Credit Agreement.

57.     *"Exit Facility Credit Agreement"* means that certain agreement governing the Exit Facility, dated on or about the Effective Date by and among the Reorganized Debtors, the lenders party thereto, and the Exit Facility Agent, in its capacities as administrative agent, collateral agent, and issuing bank (as amended, restated, supplemented, or otherwise modified from time to time).

58.     *"Exit Lenders"* means those "Lenders" under (and as defined in) the Exit Facility Credit Agreement.

59.    *"Federal Judgment Rate"* means the federal judgment rate in effect as of the Petition Date.

60.    *"Fee Claim"* means a Claim for Accrued Professional Compensation.

61.    *"File," "Filed,"* or *"Filing"* means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

62.    *"Final Order"* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

63.    *"General Unsecured Claim"* means any Unsecured Claim that is not (a) an Administrative Claim, (b) a Priority Tax Claim, (c) a Priority Non-Tax Claim, (d) a Senior Notes Claim, (e) a Subordinated Claim, (f) a Non-Subordinated Contribution and Reimbursement Claim, (g) a Fee Claim, or (h) an Intercompany Claim.

64.    *"Governmental Unit"* means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

65.    *"Holder"* means an Entity holding a Claim or an Interest.

66.    *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

67.    *"Independent Director Indemnification Obligations"* means the Debtors' obligation to indemnify Matthew Cantor, a current independent director of Holdings and PAH, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of Holdings or PAH, pursuant to and to the maximum extent provided by (a) that certain Director Agreement by and between Holdings, PAH, and Matthew Cantor, dated as of May 1, 2013, (b) the (i) articles of incorporation, (ii) certificates of formation, (iii) bylaws, and (iv) similar corporate documents (including under an Executory Contract or otherwise) of Holdings and/or PAH, and (c) applicable law, as in effect as of the Petition Date.

68.    *"Initial Litigation Trust Funding"* shall have the meaning set forth in Article IV.V.

69.    *"Intercompany Claim"* means any Claim held by a Debtor against another Debtor.

70.    *"Intercompany Interest"* means an Interest in a Debtor held by another Debtor.

71.    *"Interests"* means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

72.    *"Internal Revenue Code"* means the Internal Revenue Code of 1986, as amended from time to time.

73.    *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

74.    "*Legacy D&O Liability Insurance Policies*" means Policy Nos. 0306-3479 and 0307-4999 issued by Darwin National Assurance Company, including all endorsements, riders, and amendments thereto.

75.    "*Lien" me*ans a lien as defined in section 101(37) of the Bankruptcy Code.

76.    "*Litigation Trust*" means that certain trust established pursuant to the Plan and the Confirmation Order on the Effective Date.

77.    "*Litigation Trust Agreement*" means that certain agreement, in form and substance mutually acceptable to the Ad Hoc Committee of Senior Noteholders and the Consenting Shareholders, setting forth the terms and conditions governing the Litigation Trust, the form of which is attached as Exhibit F to the Disclosure Statement and will be included in the Plan Supplement.

78.    "*Litigation Trust Beneficiaries*" means, collectively, the Consenting Shareholders and Holders of Allowed Senior Notes Claims, each in their capacity as beneficiaries of the Litigation Trust, and their permitted assignees and transferees in accordance with the Litigation Trust Agreement.

79.    "*Litigation Trust Funding*" shall have the meaning set forth in Article IV.V.

80.    "*Litigation Trust Units*" means the 10,000 trust units initially allocated to the Litigation Trust Beneficiaries on the Effective Date, and any additional trust units allocated in accordance with the Litigation Trust Agreement.

81.    "*Litigation Trustees*" means those three (3) original trustees and any successors to the original trustees.  As set forth in the Litigation Trust Agreement, one of the trustees shall be appointed by (and may be replaced by) the Consenting Noteholders, one of the trustees shall be appointed by (and may be replaced by) the Consenting Shareholders, and one of the trustees shall be an independent member appointed (or replaced) by mutual agreement of the Consenting Noteholders and Consenting Shareholders.  The trustees shall govern the Litigation Trust in accordance with the Litigation Trust Agreement.

82.    "*Management Employment Agreements*" means those management employment agreements by and between the Debtors and the Debtors' current (as of September 1, 2013) senior management team.

83.    "*Management Incentive Plan*" means that certain post-Effective Date equity incentive program, which shall provide for up to 10% of the New Common Stock, on a fully diluted basis.  The terms, form of equity, and allocation of the Management Incentive Plan shall be determined by the New PAH Board.

84.    "*New Boards*" means, collectively, the New PAH Board and the New Subsidiary Boards, as initially comprised in accordance with the terms of the applicable New Corporate Governance Documents.

85.    "*New By-Laws*" means the form of the by-laws of each of the Reorganized Debtors.

86.    "*New Certificates of Incorporation*" means the form of the certificates of incorporation of the Reorganized Debtors.

87.    "*New Common Stock*" means a certain number of common shares in the capital of Reorganized PAH authorized pursuant to the Plan, of which up to approximately 2.1 million shares shall be initially issued and outstanding as of the Effective Date.

88.    "*New Corporate Governance Documents*" means, as applicable, (a) the New Certificates of Incorporation, (b) the New By-Laws, and (c) the New Stockholders Agreement.

89.    "*New PAH Board*" means the initial board of directors of Reorganized PAH.

7

90.    *"New Stockholders Agreement"* means the stockholders agreement for Reorganized PAH, the form of which is attached as Exhibit E to the Disclosure Statement and will be included in the Plan Supplement.

91.    *"New Subsidiary Boards"* means, with respect to each of the Reorganized Debtors other than Reorganized PAH, the initial board of directors or member, as the case may be, of each such Reorganized Debtor.

92.    *"Non-Subordinated Contribution and Reimbursement Claims"* means Claims against the Debtors for contribution, indemnification, or reimbursement that are not Subordinated Claims and are brought: (a) by any Person or Entity arising out of or resulting from the pursuit of litigation by the Litigation Trust; (b) by a Released Party other than a current officer or employee of the Debtors (as of September 1, 2013) arising out of or resulting from (i) all claims and Causes of Action against any party based on, arising out of, or relating to the 2012 Transaction, including without limitation any claims or Causes of Action for unlawful dividend, fraudulent conveyance or avoidance, (ii) all claims and Causes of Action based on, arising out of, or related to the issuance of any Security of any Debtor, (iii) all claims and Causes of Action based on, arising out of, or related to the restatement, adjustment, correction, or modification of the Debtors' financial statements, including without limitation all claims or Causes of Action based on, arising out of, or relating to (x) the Debtors' internal controls relating to financial statements and financial reporting; and (y) materially misleading financial statements provided to the Contributing Claimants in connection with the 2012 Transaction, (iv) all claims and Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information and related internal controls, including without limitation the overstatement of the Debtors' revenue, accounts receivable, and/or EBITDA, (v) all claims and Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of any of the conduct described in the Disclosure Statement (including on Exhibit G thereto) and/or (i)-(iv) above, (vi) all claims and Causes of Action for breach of fiduciary duty (including but not limited to breaches of the duties of care, good faith, and loyalty), and (vii) any and all claims and Causes of Action arising from actions taken or not taken in connection with the Restructuring and the Chapter 11 Cases; or (c) by a Released Party that is a current officer or employee of the Debtors (as of September 1, 2013) arising out of or resulting from (i) all claims and Causes of Action against any party based on, arising out of, or relating to the 2012 Transaction, including without limitation any claims or Causes of Action for unlawful dividend, fraudulent conveyance or avoidance, (ii) all claims and Causes of Action based on, arising out of, or related to the issuance of any Security of any Debtor, (iii) all claims and Causes of Action based on, arising out of, or related to the restatement, adjustment, correction, or modification of the Debtors' financial statements, including without limitation all claims or Causes of Action based on, arising out of, or relating to (x) the Debtors' internal controls relating to financial statements and financial reporting; and (y) materially misleading financial statements provided to the Contributing Claimants in connection with the 2012 Transaction, (iv) all claims and Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information and related internal controls, including without limitation the overstatement of the Debtors' revenue, accounts receivable, and/or EBITDA, and (v) all claims and Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of any of the conduct described in the Disclosure Statement (including on Exhibit G thereto) and/or (i)-(iv) above.  For the avoidance of doubt, Independent Director Indemnification Obligations do not constitute Non-Subordinated Contribution and Reimbursement Claims or Subordinated Claims, and shall be assumed by the Reorganized Debtors.

93.    *"Other Secured Claim"* means any Secured Claim that is not a Bridge Loan Credit Agreement Claim.

94.    *"PAH"* means Physiotherapy Associates Holdings, Inc.

95.    *"Person"* means a person as such term as defined in section 101(41) of the Bankruptcy Code.

96.    *"Petition Date"* means the date on which each of the Debtors commenced the Chapter 11 Cases.

K&E 27461178
PHIL1 3203261v.1

97.     *"Plan"* means this Joint Prepackaged Plan of Reorganization of Physiotherapy Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, including the Plan Supplement (as modified, amended, or supplemented from time to time), which is incorporated herein by reference.

98.     *"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, each in form and substance reasonably acceptable to the Consenting Bridge Loan Lenders, the Ad Hoc Committee of Senior Noteholders,, and Consenting Shareholders, to be Filed by the Debtors no later than five days before the Confirmation Hearing or as soon as reasonably practicable thereafter, and as may be amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including the following:  (a) the New Corporate Governance Documents for Reorganized PAH; (b) the Rejected Executory Contract and Unexpired Lease List; (c) the Assumed Executory Contract and Unexpired Lease List; (d) a list of retained Causes of Action; (e) the Litigation Trust Agreement; (f) the Exit Facility Credit Agreement; (g) the members of the New Boards, to the extent known; (h) the Description of Transaction Steps; and (i) the Management Employment Agreements.  Any reference to the Plan Supplement in this Plan shall include each of the documents identified above as (a) through (i).  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement in accordance with Article X.A hereof, and the Reorganized Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement in accordance with applicable law.

99.     *"Plan Support Agreement"* means that certain plan support agreement, dated as of October 10, 2013, by and among the Debtors, the Consenting Bridge Loan Lenders, the Consenting Noteholders party thereto, and the Consenting Shareholders, a copy of which is attached as Exhibit H to the Disclosure Statement

100.     *"Potential Defendants and Witnesses"* means those Persons and/or Entities set forth on Exhibit C to the Disclosure Statement, as such exhibit may be amended prior to the Effective Date with the consent of the Contributing Claimants, or on or after the Effective Date in accordance with the Litigation Trust Agreement.

101.     *"Priority Non-Tax Claims"* means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

102.     *"Priority Tax Claims"* means any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

103.     *"Professional"* means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

104.     *"Professional Fee Escrow Account"* means an interest-bearing account to hold and maintain an amount of Cash equal to the Professional Fee Reserve Amount funded by the Debtors on the Effective Date solely for the purpose of paying all Allowed and unpaid Accrued Professional Compensation Claims.

105.     *"Professional Fee Reserve Amount"* means the aggregate Accrued Professional Compensation Claims through the Effective Date as estimated in accordance with Article II.A.2(c) hereof.

106.     *"Proof of Claim"* means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

107.     *"Pro Rata"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class.

108.     *"Reinstated"* means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

109.    *"Rejected Executory Contract and Unexpired Lease List"* means the list (as may be amended), as determined by the Debtors or the Reorganized Debtors and in form and substance reasonably acceptable to the Ad Hoc Committee of Senior Noteholders, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be rejected by the Debtors pursuant to the provisions of Article V.A and which shall be included in the Plan Supplement.

110.    *"Rejection Claim"* means a Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

111.    *"Released Claims"* means (i) any and all claims and Causes of Action relating to any Debtor arising at any time prior to the Effective Date, including without limitation (a) all claims and Causes of Action against any party based on, arising out of, or relating to the 2012 Transaction, including without limitation any claims or Causes of Action for unlawful dividend, fraudulent conveyance or avoidance, (b) all claims and Causes of Action based on, arising out of, or related to the issuance of any Security of any Debtor, (c) all claims and Causes of Action based on, arising out of, or related to the restatement, adjustment, correction, or modification of the Debtors' financial statements, including without limitation all claims or Causes of Action based on, arising out of, or relating to (i) the Debtors' internal controls relating to financial statements and financial reporting; and (ii) materially misleading financial statements provided to the Contributing Claimants in connection with the 2012 Transaction, (d) all claims and Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information and related internal controls, including without limitation the overstatement of the Debtors' revenue, accounts receivable, and/or EBITDA, and (e) all claims and Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of any of the conduct described in the Disclosure Statement (including on Exhibit G thereto) and/or (a)-(d) above; and (ii) any and all claims and Causes of Action arising from actions taken or not taken in connection with the Restructuring and the Chapter 11 Cases; provided, however, that with respect to any Released Party, Released Claims shall not include any claims, Causes of Action or liabilities arising out of or relating to any act or omission of such Released Party that constitutes gross negligence, willful misconduct, or fraud.

112.    *"Released Party"* means each of:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Bridge Loan Agent; (d) the Bridge Loan Lenders; (e) the Consenting Noteholders; (f) the Ad Hoc Committee of Senior Noteholders; (g) the Senior Notes Indenture Trustee; (h) the Exit Facility Agent; (i) the Exit Lenders; (j) the Consenting Shareholders; and (k) with respect to each of the foregoing Entities in clauses (a) through (k), such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and current (as of September 1, 2013) officers, directors, principals, members, partners, shareholders, employees, agents (other than third-party vendors performing services for the Debtors), financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, advisory board members and other professionals, and such Persons' respective heirs, executors, estates, servants, and nominees.  Notwithstanding the foregoing, under no circumstances shall any of the Potential Defendants and Witnesses constitute a Released Party.

113.    *"Releasing Parties"* means each of: (a) the Debtors; (b) the Bridge Loan Agent; (c) the Bridge Loan Lenders; (d) the Consenting Noteholders; (e) the Senior Notes Indenture Trustee; (f) the Consenting Shareholders; and (g) without limiting the foregoing clauses (a), (b), (c), (d), (e), and (f), and notwithstanding anything contained herein to the contrary, the Holders of Claims against and Interests in the Debtors and the Reorganized Debtors who (i) vote to accept the Plan or are presumed to have voted to accept the Plan under section 1126(f) of the Bankruptcy Code and (ii) for Holders of Senior Notes Claims, have opted-in to the settlement described in Article III.C.4 below.

114.    *"Reorganized Debtors"* means the Debtors (other than Holdings, which shall be dissolved on the Effective Date), or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

115.    *"Reorganized PAH"* means PAH, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, it being understood that, as of the Effective Date, Reorganized PAH shall be a corporation organized under the laws of the state of Delaware.

116.    *"Restructuring Transactions"* means one or more transactions pursuant to section 1123 of the Bankruptcy Code to occur on the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) the execution and delivery of all documents in connection with the creation and funding of the Litigation Trust; and (e) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

117.    *"Secured"* means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

118.    *"Securities Act"* means the Securities Act of 1933, 15 U.S.C. 77a-77aa, together with the rules and regulations promulgated thereunder.

119.    *"Security"* means a security as defined in section 2(a)(1) of the Securities Act.

120.    *"Senior Notes"* means those certain 11.875% Senior Notes due 2019 issued pursuant to the Senior Notes Indenture.

121.    *"Senior Notes Claim"* means any Claim derived from, based upon, relating to, or arising from the Senior Notes Indenture.

122.    *"Senior Notes Guarantors"* means, collectively: (a) Actra Rehabilitation Associates, Inc.; (b) Alexandria Sports; Inc.; (c) Benchmark Acquisition Corp.; (d) Benchmark Medical Management Company; (e) Benchmark O & P Holdings, Inc.; (f) Benchmark Orthotics & Prosthetics, Inc.; (g) Blue Hen Physical Therapy, Inc.; (h) Cape Prosthetics-Orthotics, Inc.; (i) Carrollton Physical Therapy Clinic, Inc.; (j) Integrity Physical Therapy, Inc.; (k) Keystone Rehabilitation Associates of Warren; (l) Keystone Rehabilitation Systems, Inc.; (m) Leesburg Sports, Inc.; (n) MATRIX Healthcare Services, LLC; (o) MATRIX Rehabilitation, Inc.; (p) MATRIX Rehabilitation-Delaware, Inc.; (q) MATRIX Rehabilitation-Georgia, Inc.; (r) MATRIX Rehabilitation-Ohio, Inc.; (s) MATRIX Rehabilitation-South Carolina, Inc.; (t) MATRIX Rehabilitation-Texas, Inc.; (u) Morris Area Rehabilitation Association, Inc.; (v) North Dallas Physical Therapy Associates, Inc.; (w) Northstar Health Services, Inc.; (x) NSHS Services, Inc.; (y) Orthopaedic Services of Paducah, Inc.; (z) PhysioLink Corporation; (aa) PAH; (bb) Physiotherapy Associates-Union Rehab, LLC; (cc) Physiotherapy Associates, Inc.; (dd) Physiotherapy Corporation; (ee) Physiotherapy-BMHI Holdings, Inc.; (ff) Physiotherapy-BMI, Inc.; (gg) Potomac Rehabilitation Services, Inc.; (hh) Professional Rehab Associates, Inc.; (ii) Progressive Therapy Services, Inc.; (jj) R.S. Network, Inc.; (kk) Rehab Associates, LLC; (ll) Rehab Colorado, LLC; (mm) Rehab Missouri, LLC; (nn) Rehab Xcel, LLC; (oo) Rehabilitation Consultants, Inc.; (pp) SMR Banyan Tree, Inc.; (qq) Swanson Orthotic & Prosthetic Center, Inc.; (rr) The Parks Physical Therapy and Work Hardening Center, Inc.; (ss) Theraphysics Partners of Colorado, Inc.; (tt) Theraphysics Partners of Texas, Inc.; (uu) Therapy Associates of Martinsville, Inc.; (vv) Trumbull P.T. Corp.; and (ww) Wisconsin Prosthetics and Orthotics, Inc.

123.    *"Senior Notes Indenture"* means that certain indenture, dated as of April 30, 2012, as amended by the Supplemental Indenture (and as may be further amended, supplemented, or modified from time to time), for an issuance of $210,000,000 of Senior Notes at 11.875% interest, by and among PAH (successor by merger to Physiotherapy Merger Sub, Inc.), the Senior Notes Guarantors, and the Senior Notes Indenture Trustee.

11

124.    *"Senior Notes Indenture Trustee"* means The Bank of New York Mellon Trust Company N. A., in its capacities as trustee, registrar, paying agent and custodian under the Senior Notes Indenture.

125.    *"Senior Notes Indenture Trustee Charging Lien"* means any Lien or other priority in payment to which the Senior Notes Indenture Trustee is entitled, pursuant to the Senior Notes Indenture, against distributions to be made to holders of Allowed Senior Notes Claims, for payment of any Senior Notes Indenture Trustee Fees.

126.    *"Senior Notes Indenture Trustee Fees"* means the reasonable compensation, fees, expenses, disbursements and indemnity claims, including, without limitation, attorneys' and agents' fees, expenses and disbursements, incurred by the Senior Notes Indenture Trustee, whether prior to or after the Petition Date and whether prior to or after the consummation of the Plan, to the extent provided for under the Senior Notes Indenture.

127.    *"Senior Notes Litigation Trust Recovery"* means the 5,000 Litigation Trust Units allocated to Holders of Senior Notes on the Effective Date pursuant to the Plan.

128.    *"Subordinated Claims"* means Claims that are subordinated by section 510 of the Bankruptcy Code or otherwise applicable law.

129.    *"Supplemental Indenture"* means that certain supplemental indenture, dated as of June 18, 2013, by and among PAH (successor by merger to Physiotherapy Merger Sub, Inc.) and the Senior Notes Indenture Trustee

130.    *"Treasury Regulations"* means regulations (including temporary and proposed) promulgated under the Internal Revenue Code.

131.    *"Trust Indemnification Claims"* shall have the meaning set forth in Article IV.S.

132.    *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

133.    *"Unimpaired"* means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

134.    *"Unsecured Claim"* means any Claim that is neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code.

135.     *"U.S. Trustee"* means the United States Trustee for the District of Delaware.

136.    *"Voting Deadline"* means 11:59 p.m. (prevailing Eastern Time) on November 8, 2013.

B.    *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than

12

to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order; and (14) any undefined term used herein that is defined in the Bankruptcy Code shall have the meaning ascribed to such term in the Bankruptcy Code.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims.*

1.      Administrative Claims.

Except with respect to Administrative Claims that are Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment with respect to such Holder, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the later of:  (a) on or as

13

soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is practicable; provided, however, that Allowed Administrative Claims that arise in the ordinary course of the Debtors' business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

Except as otherwise provided in this Article II.A, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party no later than the Administrative Claims Objection Deadline.

2.    Professional Compensation.

(a)    Fee Claims.

Professionals asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or any other applicable order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 20 days after the Effective Date. Objections to any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party no later than 40 days after the Effective Date. To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims. Notwithstanding anything contrary to the foregoing contained in the Plan, in no event shall the Debtors' payments for professional fees and expenses for the period September 9, 2013 through the Effective Date relating to the investigation of the 2012 Transaction and the preparation for litigation of the Contributed Claims exceed $250,000, unless otherwise agreed to by the Ad Hoc Committee of Senior Noteholders in their sole and absolute discretion.

(b)    Professional Fee Escrow Account.

On the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Professionals. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Such funds shall not be considered property of the Litigation Trust, property of the Debtors' Estates, or property of the Reorganized Debtors. The amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order. Allowed Accrued Professional Compensation Claims shall be paid first from amounts in the Professional Fee Escrow Account and then by the Reorganized Debtors. When all Allowed Professional Compensation Claims are paid in full in Cash, amounts remaining in the Professional Fee Escrow Account, if any, shall revert to the Reorganized Debtors.

(c)    Professional Fee Reserve Amount.

To receive payment for unbilled fees and expenses incurred through and including the Effective Date, the Professionals shall estimate their Accrued Professional Compensation Claims prior to and as of the Confirmation Date, along with an estimate of fees and expenses to be incurred through and including the Effective Date, and shall deliver such estimate to the Debtors no later than five days prior to the anticipated Confirmation Date; provided, however, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional. If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The total amount so estimated as of the Confirmation Date shall comprise the Professional Fee Reserve Amount.

14

(d)       Post-Effective Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors or the Litigation Trust, as applicable, shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtors or Litigation Trust, as applicable, following the Effective Date.  Upon the Effective  Date, any requirement that Professionals comply with section 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate and the Reorganized Debtors or Litigation Trust, as applicable, may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order, or approval of the Bankruptcy Court.

B.       Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, at the option of the Debtors or Reorganized Debtors, one of the following treatments:  (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable nonbankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code, payable on the or as soon as practicable following the Effective Date; (2) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, plus interest at the rate determined under applicable nonbankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such holder and the Debtors or otherwise determined upon an order of the Bankruptcy Court.

C.       Statutory Fees.

Notwithstanding anything to the contrary contained herein, on the Effective Date, the Debtors shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.  The Reorganized Debtors shall pay all U.S. Trustee fees due and owing under 28 U.S.C. § 1930 until such time as the Reorganized Debtors move for entry of a final decree and the Bankruptcy Court enters such a decree; provided, however, that if the Litigation Trust opposes such motion, the Litigation Trust shall thereafter bear the cost of all U.S. Trustee fees until the Bankruptcy Court enters a final decree closing the Chapter 11 Cases.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.       Classification of Claims and Interests.

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests.  All Claims and Interests, except for Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

B.       Summary of Classification.

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors

are set forth herein.  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.E hereof.

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Bridge Loan Credit Agreement Claims | Impaired | Entitled to Vote |
| 4 | Senior Notes Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 6 | Intercompany Claims | Unimpaired | Deemed to Accept |
| 7 | Subordinated Claims | Impaired | Deemed to Reject |
| 8 | Non-Subordinated Contribution and Reimbursement Claims | Unimpaired | Deemed to Accept |
| 9 | Intercompany Interests | Unimpaired | Deemed to Accept |
| 10 | Interests (other than Class 9 Interests) | Impaired | Deemed to Reject |

C.    *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

1.    Class 1 - Priority Non-Tax Claims.

(a)    *Classification:* Class 1 consists of Priority Non-Tax Claims.

(b)    *Treatment:* Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Non-Tax Claim, each Holder of such Allowed Priority Non-Tax Claim shall be paid in full in Cash on or as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Non-Tax Claim against the Debtors becomes an Allowed Priority Non-Tax Claim, (iii) such other date as may be ordered by the Bankruptcy Court, or (iv) when due and payable in the ordinary course of business.

(c)    *Voting:* Class 1 is Unimpaired by the Plan, and each Holder of a Class 1 Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2 - Other Secured Claims.

(a)    *Classification:* Class 2 consists of Other Secured Claims.

(b)    *Treatment:* Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim shall receive one of the following treatments, in the sole discretion of the applicable Debtor or Reorganized Debtor:  (i) the Debtors or the Reorganized Debtors shall pay such

16

Allowed Other Secured Claims in full in Cash, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code; (ii) the Debtors or the Reorganized Debtors shall deliver the collateral securing any such Allowed Other Secured Claim; or (iii) the Debtors or the Reorganized Debtors shall otherwise treat such Allowed Other Secured Claim in any other manner such that the Claim shall be rendered Unimpaired.

(c)    *Voting:* Class 2 is Unimpaired by the Plan, and each Holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.    Class 3 - Bridge Loan Credit Agreement Claims

(a)    *Classification:* Class 3 consists of all Bridge Loan Credit Agreement Claims.

(b)    *Allowance:* The Bridge Loan Credit Agreement Claims shall be Allowed in the aggregate principal amount of $140,000,000, plus interest on such Claim, and any reasonable fees, costs, charges and other expenses provided for under the Bridge Loan Credit Agreement.

(c)    *Treatment:* Except to the extent that a Holder of an Allowed Bridge Loan Credit Agreement Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of the Allowed Bridge Loan Credit Agreement Claims, each Holder of an Allowed Bridge Loan Credit Agreement Claim shall (i) receive its Pro Rata share of the Exit Facility or (ii) be paid in full in Cash.

(d)    *Voting:* Class 3 is Impaired.  Therefore, Holders of Class 3 Bridge Loan Credit Agreement Claims are provisionally entitled to vote to accept or reject the Plan.

4.    Class 4 - Senior Notes Claims

(a)    *Classification:* Class 4 consists of all Senior Notes Claims.

(b)    *Allowance:*   The Senior Notes Claims shall be Allowed in the aggregate principal amount of $210,000,000.

(c)    *Treatment:* Except to the extent that a Holder of an Allowed Senior Notes Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of the Allowed Senior Notes Claims, each Holder of an Allowed Senior Notes Claim shall receive (i) subject to the final two sentences of this paragraph, its Pro Rata share of 100% of the New Common Stock (subject to dilution by the Management Incentive Plan) based on the principal amount of Senior Notes held by such Holder on the Distribution Record Date (calculated by issuing ten (10) shares of New Common Stock for every $1,000 in principal amount of Senior Notes held by such Holder on the Distribution Record Date) and (ii) a share of the Senior Notes Litigation Trust Recovery.  The share of the Senior Notes Litigation Trust Recovery allocated to the Holder of an Allowed Senior Notes Claim will be determined in accordance with Article IV.V and will be based on whether a Holder elects to opt-in to the settlement described in Article IV.C.  To opt-in to the settlement, a Holder of an Allowed Senior Notes Claim must agree, by electing on its Ballot, to (i) become a Releasing Party and (ii) assign its Contributed Claims to the Litigation Trust. By electing to opt-in to the settlement on its Ballot, the Holder of an Allowed

17

Senior Notes Claim agrees that, subject to the occurrence of the Effective Date and the formation of the Litigation Trust, it will be deemed, without further action, (i) to have assigned its Contributed Claims to the Litigation Trust and (ii) to have agreed to execute any documents reasonably requested to effectuate the foregoing.  The Litigation Trust Agreement will be binding on all Holders of Senior Notes Claims and all Holders of Senior Notes Claims shall be deemed to have executed the Litigation Trust Agreement as of the Effective Date.  All distributions made in respect of Allowed Senior Note Claims shall be made on account of the principal amount of such Claims and not on account of any prepetition or postpetition interest that may be owed in respect of such Claims.  The Holders of Claims in Class 4 shall be required to execute the New Stockholders Agreement before receiving their respective distributions of the New Common Stock under the Plan.  If a Holder of a Class 4 Claim as of the Distribution Record Date does not return a completed and executed signature page to the New Stockholders Agreement so that it is received by the Disbursing Agent on or before the 90th day after the Effective Date, such Holder shall be deemed to forever forfeit its right to receive the New Common Stock (but not its share of the Senior Notes Litigation Trust Recovery).

(d)     *Voting:* Class 4 is Impaired.  Therefore, Holders of Class 4 Senior Notes Claims are entitled to vote to accept or reject the Plan.

5.     Class 5 - General Unsecured Claims.

(a)     *Classification:* Class 5 consists of General Unsecured Claims.

(b)     *Treatment:* Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each General Unsecured Claim, each Holder of such Allowed General Unsecured Claim shall receive one of the following treatments, in the sole discretion of the applicable Debtor or Reorganized Debtor:  (i) the Debtors or the Reorganized Debtors shall pay such Allowed General Unsecured Claim in the ordinary course of business or (ii) the Debtors or the Reorganized Debtors shall pay such Allowed General Unsecured Claim in full in Cash, including interest at the contractual rate, upon the later of (A) the Effective Date, (B) the date on which such General Unsecured Claim against the Debtors becomes an Allowed General Unsecured Claims, (C) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting:* Class 5 is Unimpaired by the Plan, and each Holder of a Class 5 General Unsecured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 5 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

6.     Class 6 - Intercompany Claims.

(a)     *Classification:* Class 6 consists of Intercompany Claims.

(b)     *Treatment:* No distribution shall be made on account of Allowed Intercompany Claims.  To preserve the Debtors' corporate structure, on the Effective Date, or as soon thereafter as practicable, all Allowed Intercompany Claims shall be reinstated in full or in part or cancelled or discharged in full or in part, in each case, to the extent determined appropriate by the Reorganized Debtors; provided that Intercompany Claims held by Holdings shall not receive any distribution under the Plan and shall be canceled and discharged on the Effective Date.  The Debtors and the Reorganized Debtors will be entitled to transfer funds between

18

and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors historical intercompany account settlement practices.

(c)  *Voting:* Class 6 is Unimpaired by the Plan, and each Holder of a Class 6 Intercompany Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.  Class 7 - Subordinated Claims.

(a)  *Classification:* Class 7 consists of Subordinated Claims.

(b)  *Treatment:* Holders of Allowed Subordinated Claims shall not receive any distribution on account of such Subordinated Claims. On the Effective Date, Allowed Subordinated Claims shall be discharged, canceled, released, and extinguished.

(c)  *Voting:* Class 7 is Impaired and Holders of Class 7 Subordinated Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Subordinated Claims are not entitled to vote to accept or reject the Plan.

8.  Class 8 - Non-Subordinated Contribution and Reimbursement Claims

(a)  *Classification:* Class 8 consists of Non-Subordinated Contribution and Reimbursement Claims.

(b)  *Treatment:* On the Effective Date, all of the Debtors' obligations with respect to Allowed Non-Subordinated Contribution and Reimbursement Claims shall be assumed by the Litigation Trust and, to the extent not satisfied by any available insurance coverage, satisfied solely by way of setoff or recoupment, to the extent applicable, or payment by the Litigation Trust, which shall be paid after the payment of costs and expenses, including legal fees, of the Litigation Trust, but prior to any further distributions to Litigation Trust Beneficiaries  and shall not be paid from the Litigation Trust Funding.  Any Allowed Non-Subordinated Contribution and Reimbursement Claims shall only be satisfied from the proceeds of the Contributed Claims after the payment of attorneys' fees and expenses, and there shall be no clawback against previous distributions to Litigation Trust Beneficiaries in order to satisfy any such claims.

(c)  *Voting:* Class 8 is Unimpaired by the Plan, and each Holder of a Class 8 Non-Subordinated Contribution and Reimbursement Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 8 Non-Subordinated Contribution and Reimbursement Claims are not entitled to vote to accept or reject the Plan.

9.  Class 9 - Intercompany Interests.

(a)  *Classification:* Class 9 consists of Intercompany Interests.

(b)  *Treatment:* No distribution shall be made on account of Allowed Intercompany Interests.  To preserve the Debtors' corporate structure, on the Effective Date, or

19

as soon thereafter as practicable, all Allowed Intercompany Interests shall be reinstated in full or in part or cancelled or discharged in full or in part, in each case, to the extent determined appropriate by the Reorganized Debtors. Notwithstanding the foregoing, on the Effective Date, Holdings' Interests in PAH shall be cancelled and discharged.

(c)    *Voting:* Class 9 is Unimpaired by the Plan, and each Holder of a Class 9 Intercompany Interest is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 9 Intercompany Interests are not entitled to vote to accept or reject the Plan.

10.    Class 10 - Interests (other than Class 9 Interests).

(a)    *Classification:* Class 10 consists of Interests (other than Class 9 Interests).

(b)    *Treatment:* Holders of Interests (other than Class 9 Interests) shall not receive any distribution on account of such Interests. On the Effective Date, Class 10 Interests shall be cancelled and discharged.

(c)    *Voting:* Class 10 is Impaired and Holders of Class 10 Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 10 Interests are not entitled to vote to accept or reject the Plan.

D.    *Special Provision Governing Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors', the Reorganized Debtors', or the Litigation Trust's rights in respect of any Claims, including legal and equitable defenses to or setoffs or recoupments against any such Claims.

E.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.    *Acceptance or Rejection of the Plan.*

1.    Voting Classes.

Classes 3 and 4 are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

2.    Failure to Vote.

If Holders of Claims in a particular Impaired Class of Claims were given the opportunity to vote to accept or reject the Plan, but no Holders of Claims in such Impaired Class of Claims voted to accept or reject the Plan, then such Class of Claims shall be deemed to have accepted the Plan.

3.    Presumed Acceptance of the Plan.

Classes 1, 2, 5, 6, 8, and 9 are Unimpaired under the Plan, and the Holders in such Classes are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

20

4.    Presumed Rejection of Plan.

Classes 7 and 10 are Impaired and shall receive no distribution under the Plan.  The Holders in such Classes are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

G.    *Confirmation Pursuant to Sections 1129(a) (10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

H.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.    *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Sources of Cash for Plan Distributions.*

All consideration necessary for the Reorganized Debtors to make payments or distributions pursuant hereto shall be obtained from the Exit Facility, or other Cash from the Debtors, including Cash from business operations. Further, the Debtors and the Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

B.    *Exit Facility.*

On the Effective Date, the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate to satisfy the conditions to effectiveness of the Exit Facility, the terms, conditions, and covenants of each of which shall be consistent with the Exit Facility Commitment Letter, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person.

Pursuant to the terms of the Exit Facility Credit Agreement, the Exit Facility will provide the Debtors with (a) a term loan credit facility of $144.162 million, of which $140 million shall be used to refinance the existing Bridge Loan Facility and (b) incremental credit facilities, each to be issued and accessed in accordance with the Exit Facility Credit Agreement.  The Exit Facility and the Reorganized Debtors' Cash on hand will provide sufficient available funds as of the Effective Date to: (i) permit repayment in full of all Allowed Bridge Loan Credit Agreement Claims (including principal, interest, and reasonable fees, costs, charges and other expenses provided for under the Bridge Loan Credit Agreement) of Holders of Allowed Bridge Loan Agreement Claims who elect to be

21

paid in full in Cash on the Effective Date; (ii) make the other required Effective Date payments under the Plan; and (iii) provide the Reorganized Debtors with working capital necessary to run their businesses and to fund certain capital expenditures (in accordance with the Exit Facility). Any letters of credit issued under the Bridge Loan Facility shall be deemed to be issued under the Exit Facility or cash collateralized.

C.        *Settlement of Certain Claims and Interests.*

To consensually resolve all outstanding disputes among the Debtors, the Consenting Bridge Loan Lenders, the Consenting Noteholders, and the Consenting Shareholders, the Debtors, the Consenting Bridge Loan Lenders, the Consenting Noteholders, and the Consenting Shareholders have agreed to the settlement embodied in the Plan, including the creation of the Litigation Trust to most effectively and efficiently pursue the Contributed Claims, which shall be effective as of the Effective Date. The settlement was extensively negotiated in good faith and is an integral component of the Debtors' overall restructuring and the transactions contemplated herein.

Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions and other benefits provided under the Plan, the Plan constitutes a request for the Bankruptcy Court to authorize and approve the proposed settlement. Entry of the Confirmation Order shall confirm (i) the Bankruptcy Court's approval, as of the Effective Date, of the Plan and all components of the proposed settlement and (ii) the Bankruptcy Court's finding that the proposed settlement is (a) in the best interests of the Debtors, their respective Estates and the holders of Claims and Interests and (b) fair, equitable and reasonable.

Any Holder of an Allowed Senior Notes Claim shall be permitted to opt-in to the aforementioned settlement between the Debtors, the Consenting Bridge Loan Lenders, the Consenting Noteholders and the Consenting Shareholders as set forth in Article III.C.4 of the Plan; provided, however, that none of the Potential Defendants and Witnesses shall receive the releases or indemnification provided under the settlement or be a "Released Party" under the Plan.

D.        *Issuance and Distribution of New Common Stock.*

The issuance of the New Common Stock by Reorganized PAH, including options, stock appreciation rights, or other equity awards, if any, in connection with the Management Incentive Plan, is authorized without the need for any further corporate action and without any further action by the Holders of Claims or Interests.

On the Effective Date, an initial number of up to approximately 2.1 million shares of New Common Stock shall be issued and, as soon as reasonably practicable thereafter, distributed to Holders of Claims in Class 4, subject to dilution with respect to any shares issued pursuant to the Management Incentive Plan.

All of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of the New Common Stock under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

E.        *New Stockholders Agreement.*

Upon the Effective Date, Reorganized PAH shall be a private company governed by the New Stockholders Agreement. The New Stockholders Agreement shall be adopted on the Effective Date and shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Common Stock shall be bound thereby. The Holders of Claims in Class 4 shall be required to execute the New Stockholders Agreement before receiving their respective distributions of the New Common Stock under the Plan. If a Holder of a Class 4 Claim as of the Distribution Record Date does not return a completed and executed signature page to the New Stockholders Agreement so that it is received by the Disbursing Agent on or before the 90th day after the Effective Date, such Holder shall be deemed to forever forfeit its right to receive the New Common Stock (but not its share of the Senior Notes Litigation Trust Recovery).

F.      *Restructuring Transactions.*

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Restructuring Transactions under and in connection with the Plan.

G.      *Corporate Existence.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor (other than Holdings) shall continue to exist after the Effective Date as a Reorganized Debtor and as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation or governing documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation or governing documents) are amended by the Plan or otherwise amended in accordance with applicable law. To the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state or federal law).  As set forth in Article IV.W below, on the Effective Date, Holdings shall be dissolved.

H.      *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, (i) all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan, except for the assets contributed to the Litigation Trust, including any Contributed Claims of the Debtors and their Estates, shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances, except for Liens securing the Exit Facility and (ii) all property of the Debtors and their Estates contributed to the Litigation Trust, including any Contributed Claims of the Debtors and their Estates, will be transferred to and vest in the Litigation Trust, free and clear of all Liens, claims, charges or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

I.      *Cancellation of Existing Indebtedness and Securities.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date: (i) the obligations of the Debtors under the Bridge Loan Credit Agreement, the Senior Notes, and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and the Reorganized Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan as provided herein and permitting the Senior Notes Indenture Trustee to perform any necessary functions under the Senior Notes Indenture with respect to distributions to Holders of Allowed Senior Notes Claims and to have the benefit of all the protections and other provisions of the Senior Notes Indenture in doing so and to assert the Senior Notes Indenture Trustee Charging Lien against distributions to

23

Holders of Senior Note Claims for payment of any unpaid Senior Notes Indenture Trustee Fees; provided, further, however, that the preceding proviso shall not affect (i) the Senior Notes Indenture Trustee Charging Lien or (ii) the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under this Plan. On and after the Effective Date, all duties and responsibilities of the Bridge Loan Agent and the Senior Notes Indenture Trustee, as applicable, shall be discharged unless otherwise specifically set forth in or provided for under the Plan.

J.      *Corporate Action*.

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including:  (i) execution and entry into the Exit Facility; (ii) entry into the New Corporate Governance Documents; (iii) establishment and funding of the Litigation Trust; (iv) the distribution of the New Common Stock; (v) selection of the directors and officers for the Reorganized Debtors; (vi) implementation of the Restructuring Transactions contemplated by this Plan; (vii) adoption of the Management Incentive Plan; (viii) adoption or assumption, as applicable, of the agreements with existing management; and (ix) all other actions contemplated by the Plan (whether to occur before on or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, directors or officers of the Debtors or the Reorganized Debtors.

On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors (as applicable) shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Corporate Governance Documents, the Exit Facility Credit Agreement, the Litigation Trust Agreement, and any and all related and ancillary agreements, documents, and filings, New Common Stock, and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV shall be effective notwithstanding any requirements under non-bankruptcy law.  The issuance of the New Common Stock shall be exempt from the requirements of section 16(b) of the Securities Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or director (or a director deputized for purposes thereof) as of the Effective Date.

K.      *New Certificates of Incorporation and New By-Laws*.

On or promptly after the Effective Date, the Reorganized Debtors will file their respective New Certificates of Incorporation with the applicable Secretaries of State and/or other applicable authorities in their respective states or countries of incorporation in accordance with the corporate laws of the respective states, or countries of incorporation.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Certificates of Incorporation will prohibit the issuance of non-voting equity securities.  After the Effective Date, the Reorganized Debtors may amend and restate their respective New Certificates of Incorporation and New By-Laws and other constituent documents as permitted by the laws of their respective states or countries of incorporation and their respective New Certificates of Incorporation and New By-Laws.

L.      *Directors and Officers of the Reorganized Debtors*.

As of the Effective Date, the term of the current members of the board of directors of PAH shall expire, and the initial boards of directors, including the New PAH Board and the New Subsidiary Boards, as well as the officers of each of the Reorganized Debtors shall be appointed in accordance with the New Certificates of Incorporation and New By-Laws of each Reorganized Debtor.

On the Effective Date, the New PAH Board shall consist of three (3) to seven (7) directors, one (1) of whom shall be the chief executive officer of PAH and the remainder of whom shall be initially chosen by the Ad Hoc Committee of Senior Noteholders.  The New PAH Board shall elect members of the New Subsidiary Boards.

24

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial New PAH Board and the New Subsidiary Boards, as well as those Persons that serve as an officer of any of the Reorganized Debtors. To the extent any such director or officer is an "insider" as such term is defined in section 101(31) of the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Certificates of Incorporation, New By-Laws, and other constituent documents of the Reorganized Debtors.

M.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors and the officers and members of the New Boards thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan, the New Corporate Governance Documents, the Exit Facility Agreement, the Litigation Trust Agreement, and the Securities issued pursuant to the Plan, including the New Common Stock, in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

N.      *Management Incentive Plan.*

Following the Effective Date the Reorganized Debtors will implement a Management Incentive Plan, which shall reserve up to 10% of the fully diluted New Common Stock, or the non-equity equivalent thereof, to be reserved for distribution to officers, directors and employees of the Reorganized Debtors, on terms to be determined by the New PAH Board. The terms, form of equity (*e.g.*, options and/or restricted stock units), and allocation of the Management Incentive Plan shall be determined by the New PAH Board.

O.      *Senior Management and Management Employment Agreements*

The Debtors' existing senior management team (other than the Debtors' interim chief executive officer) shall remain in their current capacities as officers of the Reorganized Debtors, and the Management Employment Agreements shall be assumed (as may be amended) and filed as part of the Plan Supplement. If no new chief executive officer is chosen as of the Effective Date, Martin McGahan of Alvarez & Marsal Healthcare Industry Group will continue in his capacity as interim chief executive officer until a new chief executive officer is selected by the New PAH Board.

P.      *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) the creation of any mortgage, deed of trust, lien, or other security interest, (ii) the making or assignment of any lease or sublease, (iii) any restructuring transaction authorized by the Plan, or (iv) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

Q.      *Legacy D&O Liability Insurance Policies.*

The Legacy D&O Liability Insurance Policies are not executory contracts and, therefore, will not be assumed or rejected by the Debtors. If the Bankruptcy Court determines that a Legacy D&O Liability Insurance Policy is an executory contract and must be assumed, or assumed and assigned, to maintain coverage, the applicable

Legacy D&O Liability Insurance Policy shall be assumed and, if necessary, assigned to the applicable Reorganized Debtor.

R.      *Indemnification Provisions.*

        As of the Effective Date, each Reorganized Debtor's certificate of incorporation and/or bylaws (or other formation documents) shall provide, to the extent not satisfied by any available insurance coverage, for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, current (as of September 1, 2013) directors, officers or employees who were employed as directors, officers or employees of such Debtor, on or after September 1, 2013 at least to the same extent as the bylaws (or other formation documents) of each of the respective Debtors on the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Reorganized Debtors shall amend and/or restate its certificate of incorporation or bylaws (or other formation documents) before or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations or such directors', officers' or employees' rights; provided, however, that there shall be no indemnification, defense, reimbursement, exculpation, liability, or advancement of fees and expenses by the Reorganized Debtors with respect to Subordinated Claims or Non-Subordinated Contribution and Reimbursement Claims (with such claims treated as set forth in Article III.C.7 and Article III.C.8, respectively, of the Plan); provided, further, that nothing in the Plan, Plan Supplement, or any documentation related thereto shall in any way provide for any release, indemnification, defense, reimbursement, exculpation, liability, or advancement of fees and expenses of any of the Potential Defendants and Witnesses.

S.      *Indemnification of Consenting Noteholders and Consenting Shareholders.*

        The Litigation Trust shall, to the extent not satisfied by any available insurance coverage, indemnify and hold harmless each of the following Persons and Entities, solely to the extent such Person or Entity is not one of the Potential Defendants and Witnesses, for any and all Released Claims brought by any Person or Entity: (i) Consenting Noteholders; (ii) Consenting Shareholders; (iii) the Consenting Noteholders' and Consenting Shareholders' respective predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and current (as of September 1, 2013) officers, directors, principals, members, partners, shareholders, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, advisory board members and other professionals; and (iv) the respective heirs, executors, estates, servants, and nominees of the Persons and Entities set forth in (i)-(iii) above (the "Trust Indemnification Claims").

T.      *Assumption of Independent Director Indemnification Obligations.*

        On the Effective Date, the Debtors and the Reorganized Debtors shall assume the Independent Director Indemnification Obligations pursuant to sections 365 and 1123 of the Bankruptcy Code.  The Independent Director Indemnification Obligations that are assumed, deemed assumed, honored, or reaffirmed by the Debtors hereunder shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

U.      *Preservation of Causes of Action.*

        1.      Preservation of Causes of Action.

        In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof and excluding the Contributed Claims of the Debtors, which are contributed to the Litigation Trust, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  For the avoidance of doubt, the preservation of Causes of Action described in the preceding sentence includes, but is not limited to, the Debtors' (i) right to object

26

to Administrative Claims, (ii) right to object to other Claims, and (iii) right to subordinate Claims. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors in their respective discretion. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

The Reorganized Debtors reserve and shall retain the applicable Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The applicable Reorganized Debtor through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action except as otherwise expressly provided in the Plan and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

*V.*      *Litigation Trust*

The Litigation Trust shall be established pursuant to this Plan and become effective for the benefit of the Litigation Trust Beneficiaries on the Effective Date. The Plan and the Litigation Trust Agreement shall govern the management and administration of the Litigation Trust and the respective rights, powers, and obligations of the Litigation Trustees and the Litigation Trust Beneficiaries. The Litigation Trust Agreement will be binding on all Litigation Trust Beneficiaries who shall be deemed to have executed the Litigation Trust Agreement as of the Effective Date.

On the Effective Date, all actions, Causes of Action, controversies, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, held by any of the Contributing Claimants against the Potential Defendants and Witnesses related in any way to the Debtors, their predecessors, their respective affiliates and/or (a) through (e) below (the "Contributed Claims"), will be absolutely transferred and assigned to the Litigation Trust, including without limitation (a) all claims and Causes of Action against any party based on, arising out of, or relating to the 2012 Transaction, including without limitation any claims or Causes of Action for unlawful dividend, fraudulent conveyance or avoidance claims under state or federal law, including the Bankruptcy Code, (b) all claims and Causes of Action based on, arising out of, or related to the issuance of any Security of the Debtors, (c) all claims and Causes of Action based on, arising out of, or related to the restatement, adjustment, correction, or modification of the Debtors' financial statements, including without limitation all claims or Causes of Action based on, arising out of, or relating to (i) the Debtors' internal controls relating to financial statements and financial reporting; and (ii) materially misleading financial statements provided to the Contributing Claimants in connection with the 2012 Transaction, (d) all claims and Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information and related internal controls, including without limitation the overstatement of the Debtors' revenue, accounts receivable, and/or EBITDA, (e) all claims and Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of any of the conduct described in the Disclosure Statement (including on Exhibit G thereto) and/or (a)-(d) above and (f) any other potential claims, Causes of Action, charges, suits or rights of recovery under state, federal, or other applicable law. The Contributed Claims that may be asserted against the Potential Defendants and Witnesses with respect to the foregoing include all claims or Causes of Action arising under state and/or federal law, such as (but not limited to) claims arising under title 11 of the U.S. Code and applicable law, including without limitation sections 502(d), 510, 542 through 551, and 553 of title 11 and any similar state laws, violations of state and/or federal securities laws, breach of contract, breach of fiduciary duty (including aiding and abetting any such breach), and common law claims such as quantum meruit and unjust enrichment. For the avoidance of doubt, (a) the Contributed Claims shall not include the rights of any of the Contributing Claimants or Released Parties to receive the distributions, if any, to which they are entitled under this Plan and the Confirmation Order and (b) the Contributed Claims shall not include any actions, Causes of Action, controversies, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, whether known or unknown, reduced to judgment,

27

liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, against any of the Released Parties.  For the avoidance of doubt, in the exercise of their reasonable discretion and in accordance with the Litigation Trust Agreement, the Trustees shall not be obligated to pursue all Contributed Claims.

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, with respect to the Contributed Claims of the Debtors and their Estates, which are assigned and contributed to the Litigation Trust under this Plan, and Non-Subordinated Contribution and Reimbursement Claims, if any, which, to the extent they are Allowed, are assumed by the Litigation Trust, the Litigation Trust shall retain and may enforce all of the Debtors' rights to commence and pursue, as appropriate, any and all such Causes of Action, whether arising before or after the Petition Date, including any such actions specifically enumerated in the Disclosure Statement or the Plan Supplement, and the Litigation Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Litigation Trust may pursue such Causes of Action, as appropriate, in accordance with the Litigation Trust Agreement.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Litigation Trust will not pursue any and all available Causes of Action against them. The Litigation Trust expressly reserves all rights to prosecute any and all such Causes of Action against any Entity, except as otherwise expressly provided in the Plan. For the avoidance of doubt, the preservation of the Causes of Action described in this paragraph includes, but is not limited to, the Litigation Trust's right to object to Non-Subordinated Contribution and Reimbursement Claims, if any.

Notwithstanding anything to the contrary set forth in the Confirmation Order, the Plan, or the Disclosure Statement, (a) all claims and Causes of Action (whether or not described in the Plan or Disclosure Statement) held by the Consenting Noteholders and Consenting Shareholders are specifically preserved as against all Persons and Entities (whether or not such Persons and Entities are identified on the list of Potential Defendants and Witnesses or otherwise) other than Released Parties, and (b) the Litigation Trust may, but is not required to, pursue any and all such claims and/or Causes of Action that are contributed to the Litigation Trust (whether or not described in the Plan or Disclosure Statement) as against all Persons or Entities (whether or not such Persons and Entities are identified on the list of Potential Defendants and Witnesses or otherwise) other than Released Parties.

Net proceeds from the Litigation Trust (after deduction for all costs and expenses of the Litigation Trust (other than the initial funding of $4,500,000) and the satisfaction, to the extent applicable, of any Allowed Non-Subordinated Contribution and Reimbursement Claims and Trust Indemnification Claims) shall be distributed as follows: (1) 50% to the Consenting Shareholders and (2) 50% to the Holders of Senior Notes as of the Distribution Record Date, as set forth below.  Upon the Effective Date, there shall be 10,000 units allocated to the beneficiaries of the Litigation Trust and shall be distributed as follows:

(i) 5,000 units to the Consenting Shareholders with each Consenting Shareholder's respective share of the 5,000 units being determined by dividing the number of shares held by such Consenting Shareholder by the total number of shares held by all Consenting Shareholders, i.e., if the Consenting Shareholders collectively hold 250 shares and a particular Consenting Shareholder holds 50 shares, that Consenting Shareholder would receive 50/250 x 5,000 = 1,000 units; and

(ii) 5,000 units to the holders of Senior Notes as of the Distribution Record Date with each holder's respective share of the 5,000 units being determined as follows:

(A) The denominator of the fraction applied to each holder of Senior Notes will be equal to the sum of (x) total outstanding principal of Senior Notes, *i.e.*, $210,000,000, plus (y) the total principal amount of the Senior Notes with respect to which Contributed Claims are transferred to the Litigation Trust;

(B) The numerator of the fraction applied to each holder of Senior Notes will be equal to the sum of (x) the principal amount of Senior Notes held by such holder, plus (y) the total principal amount of the Senior Notes with respect to which Contributed Claims are transferred by such holder to the Litigation Trust.

28

(C) The fraction thus derived will be multiplied by 5,000 units.

To illustrate, if holders of $150,000,000 in principal amount of the Senior Notes contribute Contributed Claims to the Litigation Trust, the preceding denominator would be 360,000,000. If an individual holder had $6,000,000 principal amount of Senior Notes and contributed its Contributed Claims to the Litigation Trust, the relevant numerator would be $12,000,000 and such holder would receive 12/360 x 5,000 = 166.7 units in the Litigation Trust.

Subsequent to the Effective Date, units in the Litigation Trust may be further adjusted as specifically set forth in the Litigation Trust Agreement.

The Litigation Trust shall initially be funded with $4,500,000, subject to adjustment and credits as set forth below, on and as a condition precedent to the Effective Date, as follows: (i) $2,250,000 from the Reorganized Debtors, minus amounts actually paid by the Debtors or Reorganized Debtors on or prior to the Effective Date to proposed counsel to the Litigation Trust for fees and expenses incurred on or after September 9, 2013, in an amount of up to $250,000, plus any further amounts approved by the Consenting Noteholders in their sole and absolute discretion and (ii) $2,250,000 from the Consenting Shareholders (the "Initial Litigation Trust Funding"). For the avoidance of doubt, the $2,250,000 to be funded by the Consenting Shareholders to the Litigation Trust shall not be paid or reimbursed by the Debtors or the Reorganized Debtors on the Effective Date or otherwise. Additional funding to the Litigation Trust shall be governed by the procedures set forth in the Litigation Trust Agreement (such additional funding, together with the Initial Litigation Trust Funding, the "Litigation Trust Funding").

W.      *Dissolution of Holdings*

On the Effective Date or as soon as practicable thereafter, Holdings shall be dissolved in accordance with the Description of Transaction Steps.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, Executory Contracts and Unexpired Leases, including those listed on the Assumed Executory Contract and Unexpired Lease List, shall be deemed assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected prior to the Effective Date by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to reject Filed on or before the Effective Date; (iv) is identified as an Executory Contract or Unexpired Lease on the Rejected Executory Contracts and Unexpired Lease List, or (v) is the subject of a dispute regarding the Cure Claim.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Rejected Executory Contract and Unexpired Leases List, or the Assumed Executory Contract and Unexpired Leases List pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

      Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order or approval of the Bankruptcy Court.  Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan, as applicable.

      **Rejection Claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtors, their Estates, the Reorganized Debtors, the Litigation Trust, and their respective property unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  Such Rejection Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article VIII hereof.**

C.      *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed.*

      Any monetary defaults under each Executory Contract and Unexpired Lease as reflected on the Assumed Executory Contract and Unexpired Leases List shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (i) the amount of the Cure Claim, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or by mutual agreement between Debtors and the applicable counterparty.  At least 10 days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption and proposed amounts of Cure Claims to the applicable third parties.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors at least two days before the Confirmation Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount; provided, however, the Debtors, with the consent of the Ad Hoc Committee of Senior Noteholders, shall have the right to alter, amend, modify or supplement the Assumed Executory Contracts and Unexpired Lease List or Rejected Executory Contracts and Unexpired Lease List, as applicable, as identified in the Plan Supplement, through and including the Effective Date.  To the extent that the Debtors, with the consent of the Ad Hoc Committee of Senior Noteholders, alter, amend, modify or supplement the lists of Executory Contracts and Unexpired Lease included in the Plan Supplement, the Debtors will provide notice to each counterparty to an affected Executory Contract or Unexpired Lease within five days of such decision.

      Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date of the Debtors or Reorganized Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.

D.      *Insurance Policies.*

      All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

With respect to AIG National Union Fire Insurance Company of Pittsburgh, Pa policy number 01-351-13-73, on the Effective Date, the Debtors will pay the Additional Premium Amount (as defined in such policy) for a six-year Discovery Period (as defined in such policy), provided that the Additional Premium Amount does not exceed $200,000. Notwithstanding the foregoing, as set forth above, the Legacy D&O Liability Insurance Policies are not executory contracts and, therefore, are not assumed or rejected hereunder.

E.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor or the Litigation Trust has any liability thereunder. If, prior to the Effective Date, there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, Reorganized Debtors, or Litigation Trust, as applicable, shall have 28 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

G.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

H.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

### ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim), or, in each case, as soon as reasonably practicable thereafter, each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class (except those distributions to Litigation Trust Beneficiaries, which distributions will be made by the Litigation Trust in accordance with the Litigation Trust Agreement). In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the

31

next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.  Distributions to Holders of Claims or Interests related to public securities shall be made to such Holders in exchange for such securities, which shall be deemed cancelled as of the Effective Date.

B.      *Disbursing Agent.*

        Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Disbursing Agent on the Effective Date (except those distributions to Litigation Trust Beneficiaries, which distributions will be made by the Litigation Trust in accordance with the Litigation Trust Agreement).  To the extent the Disbursing Agent is one or more of the Reorganized Debtors, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.      *Rights and Powers of Disbursing Agent.*

        1.      Powers of the Disbursing Agent.

        The Disbursing Agent shall be empowered to:  (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

        2.      Expenses Incurred On or After the Effective Date.

        Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

        1.      Delivery of Distributions.

                (a)     Delivery of Distributions to Holders of Bridge Loan Credit Agreement Claims.

        Except as otherwise provided in the Plan, all distributions to Holders of Bridge Loan Credit Agreement Claims shall be governed by the Bridge Loan Credit Agreement.  The Disbursing Agent shall make such distributions directly to the Holders of Allowed Bridge Loan Credit Agreement Claims.

                (b)     Delivery of Distributions to Senior Notes Indenture Trustee.

        Except as otherwise provided in the Plan, all distributions on account of Allowed Senior Notes Claims shall be made by the Disbursing Agent at the direction and with the consent of the Senior Notes Indenture Trustee.  The Senior Notes Indenture Trustee shall direct the Disbursing Agent to hold or deliver such distributions to the beneficial owners of Allowed Senior Notes Claims in accordance with the provisions of this Plan and the terms of the Senior Notes Indenture. Any distributions held by the Disbursing Agent shall remain subject to the right of the Senior Notes Indenture Trustee to assert its Senior Notes Indenture Trustee Charging Lien against such distributions.

                        i.      <u>Senior Notes Indenture Trustee Fees</u>.  In order not to reduce the amount of distributions to Holders of Allowed Senior Notes Claims, and in light of the unimpairment of General Unsecured

32

Claims under the Plan, the Reorganized Debtors shall pay on the Effective Date all Senior Notes Indenture Trustee Fees in full in Cash, without application to or approval of the Bankruptcy Court and without a reduction to the recoveries of the Holders of the Senior Notes.

                                 ii.     <u>Additional Trustee's Fees and Expenses</u>.  In the event that the Senior Notes Indenture Trustee provides services related to distributions pursuant to the Plan, the Senior Notes Indenture Trustee will receive from the Reorganized Debtors, upon presentation of invoices in customary form and without further court approval, reasonable compensation for such services and reimbursement of reasonable expenses (including attorneys' and agents' fees) incurred in connection with such services.

            (c)         Delivery of Distributions in General.

Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, the Reorganized Debtors, the Disbursing Agent, and the Litigation Trust, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

            2.         Minimum Distributions.

No fractional shares of New Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows:  (i) fractions of one-half (1/2) or greater shall be rounded to the next higher whole number and (ii) fractions of less than one-half (1/2) shall be rounded to the next lower whole number with no further payment therefor.

            3.         Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent or the Litigation Trustees, as applicable, have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; <u>provided</u>, <u>however</u>, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the later of (i) the Effective Date and (ii) the date of the distribution.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors or the Litigation Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

*E.*       *Manner of Payment*.

            1.         All distributions of New Common Stock under the Plan shall be made by the Disbursing Agent on behalf of Reorganized PAH.

            2.         All distributions with respect to, or effected with, the proceeds of the Exit Facility shall be deemed made as of the Effective Date.

            3.         All distributions of Cash under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor (or Debtors), other than distributions made by the Litigation Trust which shall be made in accordance with the Litigation Trust Agreement.

            4.         At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

K&E 27461178

PHIL1 3203261v.1

F.        *Section 1145 Exemption.*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Stock as contemplated by Article IV.D of the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities.  In addition, under section 1145 of the Bankruptcy Code, such New Common Stock will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in the New Corporate Governance Documents, including the New Stockholders Agreement and Reorganized PAH's New Certificate of Incorporation.

G.        *Section 3(a)(9) Exemption.*

The Debtors are relying on exemptions from the registration requirements of the Securities Act, including, without limitations, section 3(a)(9) thereof, to exempt the offer and sale of the Plan Securities that may be deemed to be made pursuant to the solicitation of votes on the Plan.  Section 3(a)(9) of the Securities Act provides that the registration requirements of the Securities Act will not apply to "any security exchanged by the issuer with its existing security holders exclusively where no commission or other remuneration is paid or given directly or indirectly for soliciting such exchange."  The Debtors do not have any contract, arrangement, or understanding relating to, and will not, directly or indirectly, pay any commission or other remuneration to any broker, dealer, salesperson, agent, or any other person for soliciting votes to accept or reject the Plan. The Debtors have received assurances that no person will provide any information to Holders of Allowed Claims relating to the solicitation of votes on the Plan other than to refer the Holders of Senior Notes to the information contained in this Disclosure Statement. In addition, no broker, dealer, salesperson, agent, or any other person, is engaged or authorized to express any statement, opinion, recommendation, or judgment with respect to the relative merits and risks of the Plan.

H.        *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

I.        *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

J.        *Setoffs and Recoupment.*

The Debtors or the Reorganized Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim it may have against the Holder of such Claim.

K&E 27461178
PHIL1 3203261v.1

K.       *Claims Paid or Payable by Third Parties.*

           1.        Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors or Litigation Trust, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, a Reorganized Debtor, or the Litigation Trust, as applicable.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, a Reorganized Debtor, or the Litigation Trust, as applicable, on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor or Litigation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor or Litigation Trust, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

           2.        Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

           3.        Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, the Reorganized Debtors, the Litigation Trust, or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A.       *Prosecution of Objections to Claims.*

The Debtors, the Reorganized Debtors, or the Litigation Trust, as applicable, shall have the exclusive authority to File, settle, compromise, withdraw or litigate to judgment any objections to Claims, other than (1) Fee Claims, as permitted under the Plan (which Fee Claims shall be subject to objection by any Person with standing to object), and (2) Non-Subordinated Contribution and Reimbursement Claims and  Trust Indemnification Claims, where the Litigation Trust will have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment such Claims.  From and after the Effective Date, the Reorganized Debtors or the Litigation Trust, as applicable, may settle or compromise any Disputed Claim without notice to or action, order or approval of the Bankruptcy Court.  The Debtors, the Reorganized Debtors, and the Litigation Trust reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

B.      *Claims Administration Responsibilities.*

Except as otherwise provided herein (including, without limitation, by Article V.B), Holders of Claims shall not be required to File a Proof of Claim, and no parties should File a Proof of Claim; provided that the Debtors, the Reorganized Debtors, and the Litigation Trust, as applicable, reserve all rights to object to any Claim for which a Proof of Claim is Filed.

The Debtors, the Reorganized Debtors, or the Litigation Trust, as applicable, may, in their discretion, File with the Bankruptcy Court (or any other court of competent jurisdiction) an objection to the allowance of any Claim or any other appropriate motion or adversary proceeding with respect thereto, and the Debtors, the Reorganized Debtors, and the Litigation Trust, as applicable, shall have the right to compromise, settle, withdraw or litigate to judgment any objections to Claims for which a Proof of Claim is Filed.

C.      *Estimation of Claims.*

Before or after the Effective Date, the Debtors or the Reorganized Debtors or the Litigation Trust, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor or the Litigation Trust, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims Without Objection.*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled, or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Reorganized Debtors or the Litigation Trust, as applicable, without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Disallowance of Claims.*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors.  All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *No Distributions Pending Allowance.*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

36

G.    *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

## ARTICLE VIII.
### SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of substantially all Claims, Interests, and controversies relating to the contractual, legal, and equitable rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders, and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors or the Litigation Trust, as applicable, may compromise and settle claims against them and Causes of Action held by them against other Entities.

B.    *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C.    *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and

37

interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors.  In addition, the Bridge Loan Agent, at the request and expense of the Reorganized Debtors, shall execute and deliver all documents reasonably required to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

D.    *Releases by the Debtors.*

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date of the Plan, the Released Parties are hereby expressly, unconditionally, irrevocably, generally, and individually and collectively released, acquitted, and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all actions, claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, by statute or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or each of their respective Affiliates (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, ever had, now has, or hereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Restructuring Transactions, the Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors, taking place on or before the Confirmation Date of the Plan, including any Released Claims, other than with respect to each Released Party, Claims or liabilities arising out of or relating to any act or omission of such Released Party unknown to the Debtors as of the Petition Date that constitutes gross negligence, willful misconduct, or fraud, in each case as determined by Final Order of a court of competent jurisdiction; *provided, however,* that notwithstanding anything herein to the contrary, none of the Potential Defendants and Witnesses shall be a Released Party or receive or be deemed to receive a release under the Plan or the Confirmation Order.**

E.    *Releases by the Releasing Parties.*

**As of the Effective Date of the Plan, to the fullest extent permitted by applicable law, each of the Releasing Parties shall be deemed to have expressly, unconditionally, irrevocably, generally, and individually and collectively, released, acquitted, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all actions, claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, by statute or otherwise, that such Releasing Party (whether individually or collectively) ever had, now has, or hereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Restructuring Transactions, the Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors, taking place on or before the Confirmation Date of the Plan, including any Released Claims, other than with respect to each party released herein, Claims or liabilities arising out of or relating to any act or omission of such Released Party unknown to the Releasing Party as of the Petition Date that constitutes gross negligence, willful misconduct, or fraud, in each case, as determined by Final Order of a court of competent jurisdiction; *provided, however*, that notwithstanding anything herein to the contrary, none of the**

38

**Potential Defendants and Witnesses shall be a Released Party or receive or be deemed to receive a release under the Plan or the Confirmation Order.**

F.      *Liabilities to, and Rights of, Governmental Units.*

Nothing in the Plan or Confirmation Order shall discharge, release, or preclude:  (i) any liability to a Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtors or Reorganized Debtors; (iv) any valid right of setoff or recoupment by a Governmental Unit; or (v) any criminal liability.  Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence.  The discharge and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Confirmation Date, pursuing any police or regulatory action.

G.      *Exculpation.*

**Except as otherwise specifically provided in the Plan or Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any (i) Exculpated Claim and (ii) any obligation, Cause of Action, or liability for any Exculpated Claim, except for those that result from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity for acts or omissions occurring after the Effective Date.**

H.      *Injunction.*

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE VIII HEREOF, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE VIII HEREOF.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE VIII.D OR ARTICLE VIII.E, DISCHARGED PURSUANT TO ARTICLE VIII.B, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.G ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (ii) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (iii) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (iv) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

K&E 27461178
PHIL1 3203261v.1

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY, OR ESTATES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

EXCEPT AS EXPRESSLY SET FORTH HEREIN, ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, OR THE LITIGATION TRUST, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

FOR THE AVOIDANCE OF DOUBT, ALL CLAIMS AGAINST THE POTENTIAL DEFENDANTS AND WITNESSES, SET FORTH ON EXHIBIT C TO THE DISCLOSURE STATEMENT, INCLUDING WITHOUT LIMITATION THE CONTRIBUTED CLAIMS AND CLAIMS ARISING FROM THE FACTS AND CIRCUMSTANCES SET FORTH IN EXHIBIT G TO THE DISCLOSURE STATEMENT, WILL NOT BE RELEASED OR DISCHARGED UNDER THE PLAN OR THE CONFIRMATION ORDER, BUT WILL BE PRESERVED IN ACCORDANCE WITH THE PLAN AND MAY BE PURSUED AND LITIGATED BY THE LITIGATION TRUST.  NO PERSON OR ENTITY MAY RELY ON THE ABSENCE OF A SPECIFIC REFERENCE IN THE PLAN, THE CONFIRMATION ORDER, THE LITIGATION TRUST AGREEMENT OR THIS DISCLOSURE STATEMENT TO ANY CONTRIBUTED CLAIMS AGAINST SUCH PERSON OR ENTITY AS ANY INDICATION THAT THE LITIGATION TRUST WILL NOT PURSUE ANY AND ALL AVAILABLE CONTRIBUTED CLAIMS AGAINST SUCH PERSON OR ENTITY.   UNLESS ANY CONTRIBUTED CLAIMS AGAINST A PERSON OR ENTITY ARE EXPRESSLY WAIVED, RELINQUISHED, EXCULPATED, RELEASED, COMPROMISED, OR SETTLED IN THE PLAN, THE CONFIRMATION ORDER OR A BANKRUPTCY COURT ORDER, ALL CONTRIBUTED CLAIMS ARE EXPRESSLY RESERVED BY AND FOR THE LITIGATION TRUST, FOR LATER ADJUDICATION, AND, THEREFORE, NO PRECLUSION DOCTRINE, INCLUDING THE DOCTRINES OF RES JUDICATA, COLLATERAL ESTOPPEL, ISSUE PRECLUSION, CLAIM PRECLUSION, ESTOPPEL (JUDICIAL, EQUITABLE, OR OTHERWISE) OR LACHES WILL APPLY TO SUCH CONTRIBUTED CLAIMS UPON, AFTER, OR AS A CONSEQUENCE OF THE CONFIRMATION ORDER.  THE OBJECTION TO THE ALLOWANCE OF ANY CLAIMS FILED WITH THE BANKRUPTCY COURT WITH RESPECT TO WHICH THEY DISPUTE LIABILITY, PRIORITY, AND/OR AMOUNT (OR ANY OBJECTIONS, AFFIRMATIVE DEFENSES AND/OR COUNTERCLAIMS, WHETHER OR NOT LITIGATED TO FINAL ORDER) SHALL NOT IN ANY WAY LIMIT THE ABILITY OR THE RIGHT OF THE LITIGATION TRUST TO ASSERT, COMMENCE OR PROSECUTE ANY CONTRIBUTED CLAIMS.   NOTHING CONTAINED IN THE PLAN, THE CONFIRMATION ORDER, THE LITIGATION TRUST AGREEMENT OR THE DISCLOSURE STATEMENT WILL BE DEEMED TO BE A WAIVER, RELEASE, OR RELINQUISHMENT OF ANY CONTRIBUTED CLAIMS WHICH THE CONTRIBUTING CLAIMANTS HAD IMMEDIATELY PRIOR TO THE EFFECTIVE DATE.  THE LITIGATION TRUST SHALL HAVE, RETAIN, RESERVE, AND BE ENTITLED TO ASSERT ALL CONTRIBUTED CLAIMS FULLY AS IF THE CONTRIBUTED CLAIMS HAD NOT BEEN TRANSFERRED TO THE LITIGATION TRUST IN ACCORDANCE WITH THE PLAN, THE CONFIRMATION ORDER AND THE LITIGATION TRUST AGREEMENT.

K&E 27461178
PHIL1 3203261v.1

*I.*        *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN**

*A.*        *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article VIII.B hereof:

1.        The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Consenting Bridge Loan Lenders, the Ad Hoc Committee of Senior Noteholders, and the Consenting Shareholders.

2.        Any amendments, modifications, or supplements to the Plan (including the Plan Supplement), if any, shall be reasonably acceptable to:  (a) the Debtors, (b) the Consenting Bridge Loan Lenders, (c) the Ad Hoc Committee of Senior Noteholders, and (d) the Consenting Shareholders.

3.        All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

4.        The Debtors shall enter into the Exit Facility and the conditions precedent to funding under the Exit Facility shall have been satisfied or waived.

5.        Reorganized PAH shall have executed the New Stockholders Agreement.

6.        The Litigation Trustees shall have been appointed and the Reorganized Debtors, the Debtors, the Consenting Noteholders who have executed the Plan Support Agreement, the Consenting Shareholders, and the Litigation Trustees shall have executed and delivered the Litigation Trust Agreement.

7.        The Litigation Trust shall have been established and the Initial Litigation Trust Funding shall have been funded to the Litigation Trust.

8.        The Professional Fee Escrow Account shall have been established and funded.

*B.*        *Waiver of Conditions.*

The conditions to Consummation set forth in Article IX may be waived only by the Person whom is entitled to satisfaction of such condition, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

*C.*        *Effect of Failure of Conditions.*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any claims or Causes of Action by the Debtors, any Holders, or any other Entity; (ii) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

41

Case 13-12965-KG    Doc 18    Filed 11/12/13    Page 46 of 53

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

A.      *Modification and Amendments*.

        Subject to the Plan Support Agreement, and except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to the Plan Support Agreement and certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*.

        Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*.

        Subject to the Plan Support Agreement, the Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder or any other Entity.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

        Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, except as set forth in the Plan, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

        1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

        2.      decide and resolve all matters related to the determination of a whether a Claim shall be deemed a Subordinated Claim or Non-Subordinated Contribution and Reimbursement Claim in connection with the Plan;

        3.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

PHIL1 3203261v.1

4.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

5.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

6.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor, or the Estates that may be pending on the Effective Date;

7.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      adjudicate, decide, or resolve any and all matters that may arise in connection with or relate to the Litigation Trust Agreement;

9.      adjudicate, decide, or resolve any and all matters related to the Litigation Trust Units;

10.      adjudicate, decide, and resolve any and all Causes of Action arising under the Bankruptcy Code, including without limitation sections 502(d), 510, 542-551 and 553 commenced by the Litigation Trust;

11.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Litigation Trust Agreement;

12.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

13.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan, including obligations of the Litigation Trust and the Litigation Trustees;

14.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

15.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

16.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.K.1;

17.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

18.      determine any other matters that may arise in connection with or relate to the Plan, the New Corporate Governance Documents, the Disclosure Statement, the Confirmation Order, or any contract,

K&E 27461178
PHIL1 3203261v.1

instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

19.    enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

20.    adjudicate any and all disputes arising from or relating to distributions under the Plan;

21.    consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

22.    determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

23.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising in connection with the implementation of the agreements, documents, or instruments executed in connection with the Plan or the Litigation Trust Agreement;

24.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

25.    hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

26.    enforce all orders previously entered by the Bankruptcy Court, resolve any cases, controversies, suits, or disputes that may arise in connection with any Entity's rights arising from or obligations incurred in connection with the Plan; and

27.    hear any other matter not inconsistent with the Bankruptcy Code.

For the avoidance of doubt, the Bankruptcy Court shall not retain jurisdiction over any Causes of Action arising under state or other federal law (other than Causes of Action arising under the Bankruptcy Code) brought by the Litigation Trust in a state or other federal court of competent jurisdiction; provided, however, that nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Litigation Trust Agreement, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*.

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, the Litigation Trust, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

44

B.      *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtors, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Certain Professional Fees.*

On the Effective Date, the Debtors shall pay the reasonable and documented fees and expenses of (i) Klee, Tuchin, Bogdanoff & Stern LLP, counsel to the Ad Hoc Committee of Senior Noteholders; (ii) local co-counsel to the Ad Hoc Committee of Senior Noteholders; (iii) Houlihan Lokey Capital, Inc., the financial advisor to the Ad Hoc Committee of Senior Noteholders; and (iv) the Bridge Loan Agent.

D.      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, any Committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.  The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committees after the Effective Date.

E.      *Payment of Fees and Expenses for Counsel to the Consenting Shareholders.*

As partial consideration for contributing their Contributed Claims to the Litigation Trust, on the Effective Date, the Debtors shall pay in full in Cash the legal fees and expenses of the Consenting Shareholders relating to the Plan and the Chapter 11 Cases through the Effective Date; provided, that in no event shall such fees and expenses exceed $250,000 in the aggregate.

F.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders before the Effective Date.

G.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

H.      *Notices.*

To be effective, all notices, requests, and demands to or upon the Debtors, the Ad Hoc Committee of Senior Noteholders, the Bridge Loan Agent, the Senior Notes Indenture Trustee, and the Consenting Shareholders shall be in writing (including by facsimile transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following:

**If to the Debtors:**

Physiotherapy Holdings, Inc.
Whiteland Business Park
855 Springdale Drive, Suite 200
Exton, Pennsylvania 19341
Attention: General Counsel
Facsimile No: (610) 644-3262

**With copies to:**

Klehr Harrison Harvey Branzburg LLP
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Attention: Michael W. Yurkewicz and Domenic E. Pacitti
Facsimile No: (302) 426-9193
E-mail address: myurkewicz@klehr.com and dpacitti@klehr.com

- and -

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention: Jonathan S. Henes, P.C., Nicole L. Greenblatt, and David S. Meyer
Facsimile No: (212) 446-4900
E-mail address: jonathan.henes@kirkland.com, nicole.greenblatt@kirkland.com, and
david.meyer@kirkland.com

**If to the Ad Hoc Committee of Senior Noteholders:**

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049
Attention: Michael L. Tuchin and David A. Fidler
Facsimile No: (310) 407-9090
E-mail address: mtuchin@ktbslaw.com, dfidler@ktbslaw.com

**If to the Bridge Loan Agent:**

U.S. Bank, National Association
214 N. Tryon Street, 26th Floor
Charlotte, NC 28202
Attention: CDO Trust Services/James Hanley
Facsimile No: (704) 335-4678

**With copies to:**

Latham & Watkins LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Attention: Stacey Rosenberg
Facsimile No: (213) 891-8763

**If to the Senior Notes Indenture Trustee:**

The Bank of New York Mellon Trust Company, N.A.

46

601 Travis, 16th Floor
Houston, TX 77002
Facsimile: (713) 483-6979
Attention: Dennis J. Roemlein CCTS
E-mail address: dennis.roemlein@bnymellon.com

**With copies to:**

Reed Smith
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Facsimile: (412) 288-3063
Attention: Eric A. Schaffer
E-mail Address: eschaffer@reedsmith.com

**If to the Consenting Shareholders:**

Court Square
Park Avenue Plaza
55 East 52nd Street, 34th Floor
New York, NY 10055
Attention: John Weber and Thomas McWilliams
Facsimile: (212) 752-6397

**With copies to:**

Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Attention: Michael J. Sage, Matthew L. Larrabee and Nicole B. Herther-Spiro
Facsimile No: (212) 698-3599


After the Effective Date, the Reorganized Debtors may, in their sole discretion, notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

I.      *Entire Agreement.*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Debtors' notice, claims and balloting agent at Kurtzman Carson Consultants, LLC or the Bankruptcy Court's website at http://www.deb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

47

K.      *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, the New Corporate Governance Documents, the Litigation Trust Agreement, and the Exit Facility Credit Agreement, as any of such documents may have been altered or interpreted in accordance with the foregoing, are:  (i) valid and enforceable pursuant to their terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the parties thereto; and (iii) non-severable and mutually dependent.  The Litigation Trust Agreement shall be binding on all Litigation Trust Beneficiaries who shall be deemed to have executed the Litigation Trust Agreement as of the Effective Date.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e), 1125(g), and 1126(b) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties, individuals, or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

M.      *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

N.      *Conflicts.*

To the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other document referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with the Confirmation Order, the Confirmation Order shall govern and control.  Moreover, to the extent that any provision of the Plan Support Agreement conflicts with or is in any way inconsistent with the Plan, the Plan shall govern and control in all respects.

*[Remainder of page intentionally left blank]*

K&E 27461178
PHIL1 3203261v.1

Dated:    October 10, 2013
          Wilmington, Delaware

                              PHYSIOTHERAPY HOLDINGS, INC., on behalf of itself
                              and each of the other Debtors

                              By:  /s/ *Martin McGahan*

                              Name: Martin McGahan
                              Title:   Chief Restructuring Officer and Interim Chief
                              Executive Officer

COUNSEL:

/s/ *Jonathan S. Henes, P.C.*

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:       (302) 426-1189
Facsimile:       (302) 426-9193

-and-

Morton R. Branzburg (*pro hac vice* admission pending)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:       (215) 569-2700
Facsimile:       (856) 586-6603

- and -

Jonathan S. Henes, P.C. (*pro hac vice* admission pending)
Nicole L. Greenblatt (*pro hac vice* admission pending)
David S. Meyer (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022-4611
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

49