## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| PHYSIOTHERAPY HOLDINGS, INC., et al., | ) | Case No. 13-12965(KG) |
| | ) | |
| Debtors[1]. | ) | |
| | ) | **Re Dkt. No. 205** |

## OPINION ON DEBTORS' MOTION FOR ASSUMPTION AND REJECTION OF AGREEMENTS WITH HURON CONSULTING SERVICES, LLC[2]

### INTRODUCTION

The issues awaiting the Court's decision involve the rights of licensees and licensors

in the bankruptcy forum.  Such issues are always complicated and require careful analysis

of the agreements themselves.  Adding to the complexity here, there are multiple agreements

---

[1] The Debtors in these chapter 11 cases are: Physiotherapy Holdings; Inc.; Actra Rehabilitation Associates, Inc.; Alexandria Sports; Inc.; Benchmark Acquisition Corp.; Benchmark Medical Management Company; Benchmark 0 & P Holdings, Inc.; Benchmark Orthotics & Prosthetics, Inc.; Blue Hen Physical Therapy, Inc.; Cape Prosthetics-Orthotics, Inc.; Carrollton Physical Therapy Clinic, Inc.; Integrity Physical Therapy, Inc.; Keystone Rehabilitation Associates of Warren; Keystone Rehabilitation Systems, Inc.; Keystone Rehabilitation Systems of McMurray; Leesburg Sports, Inc.; MATRIX Healthcare Services, LLC; MATRIX Rehabilitation, Inc.; MATRIX Rehabilitation-Delaware, Inc.; MATRIX Rehabilitation-Georgia, Inc.; MATRIX Rehabilitation-Ohio, Inc.; MATRIX Rehabilitation-South Carolina, Inc.; MATRIX Rehabilitation-Texas, Inc.; Morris Area Rehabilitation Association, Inc.; North Dallas Physical Therapy Associates, Inc.; Northstar Health Services, Inc.; NSHS Services, Inc.; Orthopaedic Services of Paducah, Inc.; PhysioLink Corporation; Physiotherapy Associates Holdings, Inc.; Physiotherapy Associates-Union Rehab, LLC; Physiotherapy Associates, Inc.; Physiotherapy Corporation; Physiotherapy-BMHI Holdings, Inc.; Physiotherapy-BMI, Inc.; Potomac Rehabilitation Services, Inc.; Professional Rehab Associates, Inc.; Progressive Therapy Services, Inc.; R.S. Network, Inc.; Rehab Associates, LLC; Rehab Colorado, LLC; Rehab Missouri, LLC; Rehab Xcel, LLC; Rehabilitation Consultants, Inc.; SMR Banyan Tree, Inc.; Swanson Orthotic & Prosthetic Center, Inc.; The Parks Physical Therapy and Work Hardening Center, Inc.; Theraphysics Partners of Colorado, Inc.; Theraphysics Partners of Texas, Inc.; Therapy Associates of Martinsville, Inc.; Trumbull P.T. Corp.; and Wisconsin Prosthetics and Orthotics, Inc.. The Debtors' main corporate address is 855 Springdale Drive, Suite 200, Exton, PA 19341.

[2] Debtors' Motion to (a) assume a Certain Software License Agreement with Huron; (b) authorizing Debtors to reject all other executory contracts with Huron; and (c) declaring the consequences of such assumption and rejection, including with respect to cure amounts and indemnification obligations, (the "Motion") (D.I. 205).

between the parties requiring the Court to analyze the interplay between such agreements and the parties' respective rights in the assumption and rejection context.

JURISDICTION

The Court has jurisdiction over the matter at hand pursuant to 28 U.S.C. §§ 157 and 1334.  The matter is a core proceeding within 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

THE PROCEEDINGS OF THE CASE

On November 12, 2013 (the "Petition Date"), the Debtors filed  petitions with this Court under chapter 11 of the Bankruptcy Code, accompanied by the Joint Prepackaged Plan of Reorganization of Physiotherapy and its Debtor Affiliates, Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"), and accompanying Disclosure Statement. The Debtors were the largest pureplay providers of outpatient physical therapy services in the United States. At the Petition Date, Debtors employed 1,500 clinicians managing nearly 3 million patient visits per year.   D.I. 16 at ¶ 5. The Debtors continued to operate their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner was appointed in the Chapter 11 cases. There was no statutory committee of unsecured creditors or equity security holders appointed in the cases.

At a hearing on December 23, 2013 (the "Confirmation Hearing"), the Court entered the Confirmation Order (D.I. 197), thereby confirming the Plan and approving the accompanying Disclosure Statement.  The Plan enabled Debtors to restructure their balance sheet and capital structure and created a Litigation Trust to pursue claims and causes of action

The Debtors resolved all objections to the Plan prior to the Confirmation Hearing except the objection which Huron Consulting Services, LLC, d.b.a. Wellspring + Stockamp Huron Healthcare ("Huron" and "Huron Objection") filed.  Huron objected on the grounds that (a) pursuant to Section 365(c)(1) the license of the Software and Revenue Cycle Methodology cannot be assumed over Huron's objection, and (b) the Debtors refused to honor all of their obligations to Huron. (Huron Objection at pg. 26-28, D.I. 138)

The Debtors and Huron resolved the Huron Objection by incorporating language in the Confirmation Order providing, in pertinent part, that Huron and Debtors' "rights, title, interests, claims, defenses or the like with respect to the assumption, assumption and assignment, or rejection of the Huron Agreements [discussed below] are reserved and preserved, including, without limitation, any and all of [Huron's and] the Debtors' rights, title or interests under the Huron Agreements, until a further order is entered providing otherwise." Confirmation Order ¶ 83. The Confirmation Order contemplates that the Debtors will move to assume or reject the Huron  Agreements prior to the Effective Date of the Plan (which has not yet occurred), and that the Debtors will make a final determination as to

assumption or rejection within five days of the Court's ruling.

## THE HURON AGREEMENTS

Huron operates a consulting practice for healthcare providers, helping them to optimize the performance of clients' revenue cycle functions. In January 2011, Debtors hired Huron to assess opportunities for improving Debtors' revenue cycle. At that time, Debtors executed an Assessment Engagement Letter and a related Business Associate Letter. D.I. 138. Thereafter, on May 19, 2011, Debtors and Huron entered into a Master Agreement, a Project Arrangement Letter and a Methodology/Software License Agreement (the "License Agreement") (the Court will refer collectively, when appropriate, to all of the foregoing agreement, as the "Agreements" and the Agreements with the exception of the License Agreement, (the "Other Agreements").[3] D.I. 138.

## THE ISSUES

Debtors are seeking to assume the License Agreement while rejecting the Other Agreements. Huron takes the position that the Agreements, including the License Agreement, are integrated and that Debtors are not free to pick and choose which of the Agreements they wish to assume; Debtors must assume or reject all of the Agreements. The issues, as the Debtors aptly framed them at oral argument, are:

---

[3] More specifically, the Agreements are: (i) January 24, 2011 engagement letter that is attached as Exhibit A to the Huron Objection; (ii) January 24, 2011 Business Associate Agreement that is attached as Exhibit B to the Huron Objection; (iii) the Master Agreement that is attached as Exhibit C to the Huron Objection; (iv) May 19, 2011 project arrangement letter (the "Project Letter") that is attached as Exhibit D to the Huron Objection; (v) May 19, 2011 Methodology/Software License Agreement, i.e, the License Agreement; and (vi) February 1, 2012 Sustained Performance Services Agreement that is attached as Exhibit F to the Huron Objection.

1.      Is assumption of the License Agreement a sound exercise of the Debtors' business judgment?

2.      Can the Debtors assume the License Agreement?

3.      Can the Debtors assume the License Agreement and simultaneously reject the Other Agreements.

Although it is the third issue over which the parties battle hardest, the Court will address all three issues.

<u>Issue One:  Exercise of Business Judgment</u>

Debtors' decision to assume or reject the Agreements is a matter of business judgment. *In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003).  Debtors' decision is entitled to great deference from the Court.  *In re Armstrong World Indus.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006).

The Debtors have determined that the assumption of the License Agreement and rejection of the Other Agreements will benefit the estate.  The Debtors make it no secret that the License Agreement software is an absolute necessity for the operation of their business; they will replace it in the next six to nine months but cannot operate without it in the meantime.  Debtors are determined not to assume the Other Agreements, particularly the Master Agreement with its broad indemnification provision.  The Litigation Trust has made clear its intention to pursue claims against Huron.  Indemnifying Huron would be prohibitively expensive for Debtors.  Furthermore, Debtors have already paid in full for the

License Agreement and therefore there will be no cure claim, administrative or otherwise. Accordingly, the Court finds that the decision to assume the License Agreement and reject the Other Agreements reflects Debtors' sound business judgement.

<u>Issue Two: Assumability of the License Agreement</u>

In determining whether Debtors can assume the License Agreement, the Court will view the License Agreement in isolation and apart from the Other Agreements and whether Debtor must assume them as well. The Court will address in the next section Huron's argument that the Agreements are integrated and require consolidated treatment.

In deciding this issue, the Court must turn to the License Agreement. The License Agreement provides that:

> 7.1    In the event of a Change of Status at Client, as described Section 7.1.3 of the Master Agreement, if (1) Huron has a right to terminate this License Agreement but chooses not to exercise that right, or (ii) pursuant to Section 7.1.3 Huron has no right to terminate the License Agreement, then Licensee shall have the right to assign this License Agreement to the surviving entity, acquiring entity, lessee or managing party, as such party is described in Section 7.1.3.1 of the Master Agreement, without the consent of Huron.

Debtors then turn to the Master Agreement which provides that Huron could have – and still has not – terminated the License Agreement since a bankruptcy filing qualifies as a "Change of Status at [Debtors]." License Agreement § 7.1; and Master Agreement, § 7.1.3. Huron's argument that intellectual property law prohibits the assignment without its consent is unpersuasive given the terms of the License Agreement and the Master Agreement which

6

permit assignment.

The law is well settled in this Circuit that the right to assign by necessity creates the right to assume. *See, e.g., In re Midway Airlines, Inc.,* 6 F.3d 492, 497 (7th Cir. 1993).

Issue Three:  The Assumability of the License
Agreement and Rejection of the Other Agreements

Having now held that the assumption of the License Agreement represents a sound business purpose and that the License Agreement is assumable, the key issue in the parties' dispute comes center.   The central issue is this: can the Debtors assume the License Agreement while simultaneously rejecting the Other Agreements?  The disposition of the issue is not merely academic, but is of great financial importance to Debtors and Huron because of the indemnity.  The focus is the difference between the language of the Master Agreement and the License Agreement on the indemnity, with the Master Agreement providing far greater protection to Huron.  If Debtors are free to assume only the License Agreement, Huron will not have the benefit of the broader indemnity.

The Master Agreement's indemnity provisions are:

> 4.1  During the performance of all Projects, Huron will be acting on Client's behalf.  Therefore, Client shall defend, indemnify, and hold Huron, its officers, employees and agents harmless from and against any and all liability, loss, and expense (including, but not limited to reasonable attorneys' fees) related to claims by third parties (collectively "Claims") arising out of the performance of all Projects, including any Claim that Huron did not have the right to possess or use patient information or that Huron was engaged in the unauthorized practice of medicine or nursing, only in proportion to and to the extent that such Claims are finally judicially determined to have been

7

caused by or result from the grossly negligent acts or omissions
of Client, its officers, employees, or agents, from the intentional
wrongdoing of Client's officers, employees or agents, or from
infringement by Client of third party copyright, trademark and
patent rights.

(Exhibit C, ¶ 4.1)

The License Agreement provides that:

1.5 <u>Credit Balance Review.</u> . . . Licensee acknowledges
and agrees that the Software is not intended nor designed to be
utilized to prioritize or manage specific credit balance accounts,
Licensee shall indemnify and hold Huron harmless from and
against any claims, damages or expenses arising from
Licensee's use of the Software to prioritize or manage specific
credit balance accounts. . . .

1.6 <u>Import of Data from Software.</u> . . . If Licensee
imports data from the Software into another Licensee
information system, Licensee shall indemnify and hold Huron
harmless from and against any claims, damages or expenses
arising from Licenses's import of data from the Software or use
of data from the Software in Licensee's information systems.

(Exhibit E, ¶¶ 1.5, 1.6)

The Debtors admit that they require the use of the licensed software for a least the

next six to eight months.  They cannot continue their business without the software.  Debtors

are seeking a replacement.  Debtors have already paid for the  use of the software so the cost

of assuming just the License Agreement for temporary use is negligible.  The Debtors do not

want to assume the Other Agreements because the Other Agreements contain indemnity

requirements for Huron's protection.  Huron is the subject of litigation  by the

post-Confirmation Litigation Trust for alleged problems relating to the software.  Debtors

are unwilling to take the risk of the unknown cost of indemnifying Huron.  Debtors have

proclaimed that if they are  unable to assume the License Agreement alone, and reject the

Other Agreements, they will also reject the License Agreement, placing their reorganization

in peril.

Huron, on the other hand, is unwilling to agree that Debtors may assume only the

License Agreement, which does not contain the broad indemnity contained in the Master

Agreement.  Huron is facing a lawsuit and wants the broad indemnity protections.

Huron's argument is premised on the principle of "assumption *cum onere.*"  When a

debtor assumes a contract, it does so with all of the burdens of the contract.  *In re Fleming

Cos.*, 499 F.3d 300, 308 (3rd Cir. 2007).  Thus, a debtor cannot pick and choose among

contract terms, taking what it likes and eliminating what it does not.  Huron opposes Debtors'

position that the provisions of the License can be read alone, wholly separate from the Master

Agreement.  Huron views the Agreements as an integrated whole.  If Huron is correct,

Debtors must assume the Agreements in their entirety, including all of their obligations, or

reject them all.

The Master Agreement contains the "terms and conditions that apply to all consulting

services provided by Huron to [Debtors]."  Huron backs up this language with what it terms

a "basic rule of contract law," that unless there is evidence showing a different intention,

"writings executed at the same time and relating to the same transaction are construed

together as a single contract . . . ."  *Martin Marrietta Materials, Inc*., 56 A.3d 1072, 1120 n.

9

192, quoting 17A C.J.S. Contracts § 315 at 357 (1999).   Cutting through the side issues

which the parties raise, Huron's case depends on the Court finding that the Agreements

constitute a single contract and thus Debtors must treat the License Agreement and the Other

Agreements the same; either assume all of the Agreements or reject them all.

The Court must turn to the Agreements and, specifically, the Master Agreement and

the License Agreement.  Huron directs the Court's attention to the following language in the

Master Agreement:

> The terms of this Agreement shall be incorporated into the
> Project Arrangement Letters, the License Agreements, the
> Support Agreements and the Business Associate Agreements to
> the extent they are not inconsistent with those agreements.

 (Exhibit C, pg 1)

The Master Agreement then provides that:

> This Agreement, subsequent Project Arrangement Letters
> and related exhibits, including the License Agreement, the
> Support Agreement and Business Associate Agreement,
> represent the entire, final and complete agreement between
> Client and Huron with regard to the services Huron will
> perform.  This Agreement supersedes and replaces any prior
> discussions, representations or agreements, written or oral, as to
> its subject matter.  In the event an issue is addressed both in this
> Agreement and in a Project Arrangement Letter or other
> document that relates to a specific Project, the terms of that
> Project Arrangement Letter or other Project-specific document
> shall govern to the extent they are not inconsistent and in
> conflict with the terms of this Agreement.

(Exhibit C, ¶ 11.15)

10

The License Agreement also refers to the Master Agreement, as follows:

> This Agreement, and the relevant portions of the Consulting Agreement constitute the entire agreement of the parties with respect to the subject matter of this Agreement. Specifically, the terms and conditions of the Master Agreement are incorporated into this Agreement by this reference. This Agreement supersedes conflicting portions of the Consulting Agreement Termination Provisions are incorporated into the terms hereof as provided in Section 4 above.

(Exhibit E, ¶ 5)

On the basis of the foregoing language, Huron concludes that (1) the Master Agreement and the License Agreement are a single agreement; and (2) the Master Agreement and the License Agreement both provide that the terms of the Master Agreement are to be incorporated into the License Agreement. If Huron is correct, Debtors will not be able to assume only the License Agreement.

The Debtors urge the Court to view the facts and the law which applies to such facts very differently. First, Debtors direct the Court's attention to the indemnity provisions in the License Agreement and the Master Agreement. The indemnity requirements in the License Agreement are clearly narrower than those in the Master Agreement. The real significance, however, is that the License Agreement contains indemnity language at all. If the Master Agreement and the License Agreement are to be read as a single agreement, there would be no need for indemnity language in the License Agreement. The broader provisions of the Master Agreement would be sufficient. There are other inconsistencies which belie Huron's insistence that the Agreements are a single agreement. These include:

1.    The Master Agreement provides that "[i]n the event an issue in both this Agreement and in a Project Agreement Letter or other document that relates to a specific Project, the terms of that Project Agreement Letter or other Project-specific document shall govern ...."  Master Agreement, § 11.15.

2.    The License Agreement provides that it "supersedes conflicting portions of the Consulting Agreement and any other prior agreements ...."  License Agreement, § 5.

Huron cites two cases in support of its "single agreement" argument, i.e., that all of the Agreements are fully integrated and must be assumed or rejected as one contract.  They are *In re Holland Enterprises, Inc.* 25 B.R. 301 (Bankr. E.D.N.C. 1982) and *In re Buffets Holdings, Inc.*, 387 B.R. 115 (Bankr. D. Del. 2008).  *Holland* involved a lease, and the holding stands for the unexceptional proposition that a debtor cannot assume part of a lease and reject a conditional assignment that is integral to that same lease.

*Buffets* requires a more detailed analysis.  Huron cites *Buffets* for its holding that a multi-part agreement is not severable if the parties entered into the agreement as a whole, without which there would have been no agreement.  Buffets, 387 B.R. 122.  In *Buffets*, the facts included two master leases which incorporated 21 leases in 12 states.  Each of the 21 leases was for a separate operating restaurant operating independently of the other restaurants.  Each restaurant submitted their own financial report to the lessor.   The tenants wired the total rent to lessor in a lump sum, but the  rents were allocated among each of the restaurants.  When Debtors sought to assume some but not all of the leases, the court found

12

that the master lease was a contract which debtors had to assume or reject in its entirety.

*Holland* and *Buffets* are examples of fully integrated leases. Here, by contrast, the Agreements are each separate, stand-alone, complete agreements. Under the circumstances, Section 365 of the Code permits the Debtors to pick and choose which of the Agreements they want to assume. *In re Plitt Amusement Co. of Wash., Inc.*, 233 B.R. 837,840 (Bankr. C.D. Cal. 1999).

The Agreements do not constitute an integrated arrangement which the Court should consider singular. For one, they were not executed at the same time. The Agreements were signed at three different times. Two, in the event of a contradiction in terms between the License Agreement or one of the Other Agreements, the Master Agreement takes the back seat. Master Agreement § 11.15. Three, the integration clause in the Master Agreement does not reduce the separate License Agreement to a mere component of the Master Agreement. Instead, the integration clause simply means all of the Agreements between the parties are reflected in the Agreements as written, thereby eliminating parol evidence.

The Court concludes from the foregoing that the License Agreement and Master Agreement are independent agreements, and therefore Debtors may assume the License Agreement and reject the Other Agreements.

CONCLUSION

For the reasons the Court has provided, the Court will enter an order granting the

Motion.

Dated: March 19, 2014

KEVIN GROSS, U.S.B.J.