**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PHYSIOTHERAPY HOLDINGS, INC., *et al.*,[1]<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 13-12965 (KG)<br><br>Joint Administration<br><br>**Obj. Deadline: December 7, 2015 at 4:00 p.m.**<br>**Hearing Date: December 21, 2015 at 10:00 a.m.** |

## JOINT MOTION OF REORGANIZED DEBTORS AND HURON CONSULTING SERVICES LLC FOR ORDER APPROVING SETTLEMENT

The Reorganized Debtors[1] and Huron Consulting Services, LLC ("<u>Huron</u>"), by and through their undersigned counsel, respectfully submit this motion (the "<u>Motion</u>"), pursuant to

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Physiotherapy Holdings, Inc. (5193); Actra Rehabilitation Associates, Inc. (7806); Alexandria Sports, Inc. (7654); Benchmark Acquisition Corp. (3850); Benchmark Medical Management Company (0335); Benchmark O & P Holdings, Inc. (6848); Benchmark Orthotics & Prosthetics, Inc. (7000); Blue Hen Physical Therapy, Inc. (7267); Cape Prosthetics-Orthotics, Inc.(7914); Carrollton Physical Therapy Clinic, Inc. (2832); Integrity Physical Therapy, Inc. (1075); Keystone Rehabilitation Associates of Warren (8341); Keystone Rehabilitation Systems, Inc. (8380); Keystone Rehabilitation Systems of McMurray (6304); Leesburg Sports, Inc. (4190); MATRIX Healthcare Services, LLC (7344); MATRIX Rehabilitation, Inc. (3147); MATRIX Rehabilitation-Delaware, Inc. (2504); MATRIX Rehabilitation-Georgia, Inc. (4073); MATRIX Rehabilitation-Ohio, Inc. (2505); MATRIX Rehabilitation-South Carolina, Inc.(5603); MATRIX Rehabilitation-Texas, Inc. (9542); Morris Area Rehabilitation Association, Inc. (2043); North Dallas Physical Therapy Associates, Inc. (5331); Northstar Health Services, Inc. (7152); NSHS Services, Inc. (6789); Orthopaedic Services of Paducah, Inc. (3143); PhysioLink Corporation (3705); Physiotherapy Associates Holdings, Inc. (3367); Physiotherapy Associates-Union Rehab, LLC (0041); Physiotherapy Associates, Inc. (7193); Physiotherapy Corporation (3816); Physiotherapy-BMHI Holdings, Inc. (3361); Physiotherapy-BMI, Inc. (4107); Potomac Rehabilitation Services, Inc. (2725); Professional Rehab Associates, Inc. (2393); Progressive Therapy Services, Inc. (8449); R.S. Network, Inc. (9104); Rehab Associates, LLC (9381); Rehab Colorado, LLC (5804); Rehab Missouri, LLC (0587); Rehab Xcel, LLC (0586); Rehabilitation Consultants, Inc. (1166); SMR Banyan Tree, Inc. (6933); Swanson Orthotic & Prosthetic Center, Inc. (2308); The Parks Physical Therapy and Work Hardening Center, Inc. (2926); Theraphysics Partners of Colorado, Inc. (2115); Theraphysics Partners of Texas, Inc. (9976); Therapy Associates of Martinsville, Inc. (1394); Trumbull P.T. Corp. (3855); and Wisconsin Prosthetics and Orthotics, Inc. (7815). The Reorganized Debtors' main corporate address is 855 Springdale Drive, Suite 200, Exton, PA 19341.

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order (the "Settlement Order") *inter alia*, approving the settlement (the "Settlement") between the Reorganized Debtors and Huron, on the terms and subject to the conditions set forth in the Settlement Agreement (the "Settlement Agreement"), in the form attached hereto as **Exhibit A**; and (b) providing the "Settlement Order," in the form attached hereto as **Exhibit B**, and described herein.  The Reorganized Debtors support the filing of this Motion.

In further support hereof, Huron and the Reorganized Debtors respectfully represent as follows:

## BACKGROUND

1.     The Reorganized Debtors and/or their affiliated and predecessor entities engaged Huron in 2011 and 2012 to perform services related to revenue cycle management pursuant to certain consulting and license agreements (the "Consulting Agreements").

2.     The Consulting Agreements provided that Physiotherapy would indemnify Huron in certain circumstances (the "Consulting Agreement Indemnity Rights").

3.     On November 12, 2013, Debtors filed voluntary petitions for bankruptcy relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), styled *In re Physiotherapy Holdings, Inc., et al.,* Case No. 13-12965 (KG) (the "Bankruptcy Action").

4.     On December 23, 2013, the Bankruptcy Court entered an Order confirming the Joint Prepackaged Plan of Reorganization of the Debtors Pursuant to Chapter 11 of the Bankruptcy Code (Docket No. 197, the "Plan")

5.     The Plan provided for the establishment of the Litigation Trust.

6.     Pursuant to Article IV.V of the Plan, on the effective date of the Plan, the "Contributing Claimants" (as defined in the Plan) transferred and assigned to the Litigation Trust all claims against the "Potential Defendants and Witnesses" (as defined in the Plan to include Huron, among other unrelated individuals and entities) related in any way to the Debtors.

7.     The Plan provides the Reorganized Debtors with rights to indemnification from the Litigation Trust in certain circumstances.

8.     Huron filed proofs of claims against the Debtors on January 29, 2014, (the "Initial Proofs of Claim"), and amended these on April 18, 2014 (the "First Amended Proofs of Claim");

9.     On March 19, 2014, this Court entered its (a) Opinion on Debtors' Motion for Assumption and Rejection of Agreements with Huron Consulting Services LLC and (b) Order (A) Authorizing the Debtors to Assume a Certain Software License Agreement with Huron; (B) Authorizing the Debtors to Reject all other Executory Contracts with Huron; and (C) Declaring the Consequences of Such Assumption and Rejection, Including with Respect to Cure Amounts and Indemnification Objections, which authorized Debtors to assume only one of the Huron Agreements and to reject the remainder.

10.    On April 7, 2014 the Court entered an *Order Granting Motion of Huron Consulting Services LLC Regarding Allowance and Payment of Administrative Expenses and Rejection Damages Claims*, which, among other things, authorized Huron to file an amended request for allowance of administrative expenses and amended rejection damages claims within thirty days after this Court entered an order granting or denying the *Debtors' Motion for Entry of an Order (A) Authorizing the Debtors to Assume a Certain Software License Agreement with Huron;(B) Authorizing the Debtors to Reject all Other Executory Contracts with Huron and (C) Declaring*

*the Consequences of Such Assumption and Rejection, Including with Respect to Cure Amounts an Indemnification Obligations*;

11.     On July 13, 2015, the District Court reversed the Assumption Order and remanded the matter to this Court with the direction that the Reorganized Debtors must now assume certain of the Huron Agreements together, or reject the previously assumed agreement.

12.     On August 6, 2015, the Reorganized Debtors filed the *Reorganized Debtors' Motion for Entry of an Order Authorizing the Debtors to Reject All Executory Contracts with Huron* (Docket No. 440, the "Rejection Motion").  The Consulting Agreements constitute all known contracts between the Reorganized Debtors and Huron at the time of filing the Rejection Motion.  The deadline to object to the Rejection Motion expired on September 8, 2015, which was extended solely for Huron, and no party has responded or filed an Objection to the Rejection Motion.

13.     On August 12, 2015, Huron filed amendments to the Initial Proofs of Claim and to the First Amended Proofs of Claim (the "Second Amended Proofs of Claim"; together with the Huron's Initial Proofs and Claim and its First Amended Proofs of Claim, the "Huron Proofs of Claim");

14.     The Parties have engaged in extensive confidential settlement discussions.

15.     On November 18, 2015, the Parties reached agreement on the key terms of the Settlement, which were then set forth in detail in the Settlement Agreement, attached as Exhibit A hereto.

**JURISDICTION AND VENUE**

16.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates

for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## SUMMARY OF UNDERLYING DISPUTE

17. In the Huron Proofs of Claim, Huron asserts, among other things, that the Debtors are liable to Huron in connection with contract and license agreements related to revenue cycle management. The Reorganized Debtors unequivocally deny all these allegations and deny any and all liability in connection with the Huron Proofs of Claim.

## DESCRIPTION OF COMPROMISE AND SETTLEMENT

18. The Parties have engaged in extensive, good-faith, arms-length negotiations and ultimately reached a Settlement. The principle terms of the Settlement—which are set forth in the Settlement Agreement attached hereto as Exhibit A—are as follows:[2]

   (a) The Settlement releases all claims against (i) the Reorganized Debtors and (ii) The Reorganized Debtors' parents, subsidiaries, and affiliates (collectively with the Reorganized Debtors, the "Debtor Entities"), including each of the respective Debtor Entities' predecessors, successors, directors, officers, partners, principals, employees, assigns, agents, insurers, attorneys, and other representatives (each in their capacities as such) (collectively with the Debtor Entities, the "Debtor Released Parties").

   (b) The Parties agree that the amounts of the Settlement Payment are to be allocated $140,000 to the Huron Proofs of Claim, and $10,000 to Huron's claims to indemnification by debtor pursuant to the Consulting Agreement Indemnity Rights.

   (c) Within ten (10) business days of the Settlement Effective Date, the Reorganized Debtors will cause to be paid to Huron a settlement payment in the total amount of $150,000 US dollars (the "Settlement Payment").

---

[2] This overview is qualified in its entirety by reference to the provisions of the Settlement Agreement. In the event of any inconsistency between the terms of this overview and the terms of the Settlement Agreement, the Settlement Agreement shall govern in all respects.

(d) The Parties are granting mutual releases as set forth in detail in the Settlement Agreement.

## RELIEF REQUESTED

19. By this Motion, the Reorganized Debtors and Huron seek entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), substantially in the form attached hereto as Exhibit B, (i) approving the Settlement Agreement and authorizing the Reorganized Debtor to enter into and implement the Settlement Agreement in accordance with the terms thereof; (ii) entering the Settlement Order; and (iii) granting the *Reorganized Debtors' Motion for Entry of an Order Authorizing the Debtors to Reject All Executory Contracts with Huron* [Dkt. No. 440].

## BASIS FOR RELIEF REQUESTED

### A.  Standard for Approving Settlement

20. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." *In re Summit Metals, Inc.*, 98-2870 (KJC), 2011 WL 1085680, at *2 (D. Del. March 23, 2011).

21. The decision whether to approve a settlement under Rule 9019 is committed to the sound discretion of the Court. *In re Filene's Basement, LLC*, 11-13511 (KJC), 2014 WL 1713416, at *7 (Bankr. D. Del. April 29, 2014).

22. The starting point in analyzing any proposed settlement is the general policy encouraging settlements and compromises. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) ("to minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy"); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005) (same).

PHIL1 5042795v.1

23. Further, "[i]n approving a settlement, the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must only conclude that the compromise is fair, reasonable, and in the best interest of the estate." *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008) (internal quotations and citations omitted).

24. In exercising its discretion, the bankruptcy court may also consider the opinions of the debtor in possession and its counsel that the settlement is fair and reasonable. *See In re MF Global Inc.*, No. 11-2790 (MG), 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) ("[C]ourts may give weight to the opinion of bankruptcy counsel supporting the settlement."); *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010) ("[T]he court is permitted to rely upon opinions of the trustee, the parties, and their attorneys.") (internal quotations omitted).

25. Bankruptcy courts in the Third Circuit have applied the following factors in determining whether a proposed settlement is fair, reasonable, and in the best interest of the estate: (a) the probability of success in litigation; (b) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; (c) the likely difficulties in collection; and (d) all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise, including the paramount interests of the creditors. *See In re TSIC, Inc.*, 393 B.R. at 78-79 (citing *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006)). "Basic to the process of evaluating a proposed settlement, then, is the need to compare the terms of the compromise with the likely rewards of the litigation." *Id.* at 79 (internal quotations omitted).

26. An analysis of the above factors demonstrates that the Settlement Agreement is fair, reasonable, and in the best interest of the Reorganized Debtors' estates and creditors.

    **B.**    **The Settlement Should Be Approved as Fair, Reasonable, and in the Paramount Interest of the Creditors**

27. Although the Parties disagree regarding the probability of success for the Huron Proofs of Claim and claims related to the Consulting Agreement Indemnity Rights (together, the "Claims"), the complexity, cost, and time to judgment weigh heavily in favor of this settlement.

28. First, there are a multitude of complex fact and legal issues surrounding the Claims.

29. Second, given the defenses the Reorganized Debtors may raise in response to Huron's Claims, the Parties face the prospect of protracted, contentious and costly litigation, and the likelihood of additional costs on appeal. The expense of litigating the Claims to conclusion would be substantial, including substantial paper and electronic discovery materials, and numerous depositions. All of these activities would impose significant costs on Huron and the Reorganized Debtors. The settlement eliminates these significant costs as well as the uncertainty and risks inherent in litigation.

### C.     The Settlement Is the Result of Arm's-Length Negotiations

30. Whether a settlement was the result of arm's-length bargaining and not the result of fraud or collusion may also be a factor weighed by a court in determining whether to approve a proposed settlement. *See In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 362 (Bankr. S.D.N.Y. 2002).

31. Here, the Settlement was proposed, negotiated, and entered into by the Parties with the assistance of competent counsel, without collusion, in good faith, and from arm's-length bargaining positions.

32. The Settlement is supported by consideration on both sides, including a monetary payment by the Reorganized Debtors.

33. In short, the decision by the Parties to execute the proposed Settlement was made after full and complete assessment of the factual record and the applicable law. In light of these facts, it is clear that the Settlement is the result of truly arm's-length negotiations.

### D. **This Court Should Enter the Settlement Order**

34. This Court should also enter the Settlement Order, which includes provisions implementing the terms of the Settlement Agreement.

### **NOTICE**

35. Notice of this Motion has been provided to (a) the Office of the U.S. Trustee; (b) counsel for the Litigation Trust; (c) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (d) all persons who have requested notice in the above-captioned bankruptcy cases pursuant to Bankruptcy Rule 2002.

### **CONCLUSION**

WHEREFORE, for the reasons set forth in this Motion, the Parties respectfully request that this Court enter the Settlement - Order approving the Settlement Agreement and grant such other relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: November 20, 2015<br>Wilmington, Delaware | */s/ Michael W. Yurkewicz*<br>Domenic E. Pacitti (DE Bar No. 3989)<br>Michael W. Yurkewicz (DE Bar No. 4165)<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>919 N. Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>Telephone:   (302) 426-1189<br>Facsimile:   (302) 426-9193<br><br>- and –<br><br>Jonathan S. Henes, P.C. (admitted pro hac vice) |

9

        Nicole L. Greenblatt (admitted pro hac vice)
        Nathaniel Kritzer (pro hac vice admission pending)
        **KIRKLAND & ELLIS LLP**
        601 Lexington Avenue
        New York, New York 10022
        Telephone:   (212) 446-4800
        Facsimile:    (212) 446-4900

        Co-Counsel to the Reorganized Debtors


Dated: November 20, 2015        */s/ Andrew R. Remming*
Wilmington, Delaware        Eric D. Schwartz (DE Bar No. 3134)
        Andrew R. Remming (DE Bar No. 5120)
        **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
        1201 N. Market Street
        P.O. Box 1347
        Wilmington, Delaware 19899-1347

        - and –

        Christopher J. Barber, Esq.
        Jonathan Miller, Esq.
        WILLIAMS MONTGOMERY & JOHN LTD
        233 South Wacker Drive, Suite 6100
        Chicago, IL 60606

        Co-Counsel to Huron Consulting Services, LLC